E-FILED
Friday, 18 November, 2022  08:51:49 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS, AT URBANA

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| VIKRAM D. AMAR, in his official capacity | ) | No. 2:22-cv-02252 |
| as Dean of the University of Illinois College | ) | |
| of Law; VIRGINIA M. VERMILLION, in her | ) | JURY TRIAL DEMAND |
| official capacity as Assistant Dean of Academic | ) | |
| Affairs and Dean of Students at the College of Law; | ) | |
| VERITY WINSHIP, in her official capacity as | ) | |
| Associate Dean of Academic Affairs at the College of | ) | |
| Law; SUSAN LANDRUM, in her individual capacity | ) | |
| and her official capacity as Dean of Students at | ) | |
| the College of Law;  JUSTIN BROWN, KATHERINE | ) | |
| SNYDER, ROBERT WILCZYNSKI, all in | ) | |
| their individual capacities and all in their official | ) | |
| capacities as members of the Behavioral Intervention | ) | |
| Team at the University of Illinois, BEHAVIORAL | ) | |
| INTERVENTION TEAM MEMBERS, all in their | ) | |
| official and individual capacities at the University | ) | |
| of Illinois; TIMOTHY L. KILLEEN, in his individual | ) | |
| capacity and his official capacity as President of the | ) | |
| University of Illinois; ROBERT J. JONES, in his | ) | |
| individual capacity and his official capacity | ) | |
| as Chancellor of the University of Illinois at | ) | |
| Urbana-Champaign and Vice President of the | ) | |
| University of Illinois System; DANITA M. BROWN | ) | |
| YOUNG, in her individual capacity and her official | ) | |
| capacity as Vice Chancellor for Student Affairs; | ) | |
| UNIVERSITY OF ILLINOIS BOARD OF TRUSTEES | ) | |
| MEMBERS, all in their individual and official | ) | |
| capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, John Doe brings this action under the First, Fifth and Fourteenth Amendments of the United States Constitution, and Title VI and IX of the Civil Rights Act against Defendants for declaratory and injunctive relief, and alleges the following:

## INTRODUCTION

1.      The First Amendment, made applicable to the states by the Fourteenth Amendment, "includes both the right to speak freely and the right to refrain from speaking at all." *Janus v. AFSCME*, 138 S. Ct. 2448, 2463 (2018) (citations omitted). "Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Id.*

2.      The University of Illinois Urbana-Champaign ("the University") and its officials disagree. In fact, the University could not care less about the Supreme Court's commands. That is why the University believes that it has the authority to compel students to speak against their will without any basis.

3.      First, the University has what it calls the Behavioral Intervention Team ("BIT"). BIT supposedly exists to prevent "targeted violence" against the community. But BIT says that it is "founded on the principles of early intervention and proactive engagement to prevent violence and provide supportive services." In other words, the existence of an actual threat is irrelevant as it relates to BIT action. The school encourages people to report information to BIT regarding any "concerning" behavior.

Thus, the faculty and staff are free to report students at will for any arbitrary or capricious reason—even if the reports violate the student's rights under the Student Code and U.S. Constitution. There is no evidence to suggest that the school requires BIT to verify any of the information it receives. BIT then possesses the power to demand that a student come in for what amounts to a forced mental health evaluation against the student's will.

4.     Second, the University claims in its Student Code that a student may be disciplined for failing to comply with a "reasonable" request from a school official. But the University does not apply a reasonable person standard; instead, it construes the word "reasonable" as meaning whatever it says it means. What is worse is that the University construes that provision of that Student Code to require the compulsion of speech—even if there is no evidence to justify such forced speech.

5.     What is more terrifying still is that the school barely mentions BIT anywhere in its Student Code. Yet the school recommends dismissing a student from the school if the student does not comply with BIT's demands. A student must speak with BIT if asked—even if it violates their innermost convictions—or they shall be dismissed from the University. And meeting with BIT requires the student to speak. The student must respond to the *specific* report filed to BIT by the University, and the student must speak about the *particular* topics that BIT demands and utter the words that BIT wishes.

6.      The University says that a student must speak on command or face the ultimate penalty of dismissal from the school. And the school makes no effort to justify such a program under the First Amendment. But how can that be in the United States of America? After all, "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. Bd. of Educ. v. Barnette,* 319 U.S. 624, 642 (1943).

## JURISDICTION AND VENUE

7.      Plaintiff alleges violations of the U.S. Constitution and federal law and brings this action under 42 U.S.C. §§ 1983 and 1988.

8.      This Court possesses subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

9.      The events arose in the Central District of Illinois; thus, the venue is proper under 28 U.S.C. § 1391.

## PARTIES

10.     Plaintiff, John Doe is a second-year law student at the University of Illinois College of Law. Plaintiff hopes to obtain a Juris Doctor and become a member of the legal profession.

11.     The University of Illinois is a public university that exists under the laws of the State of Illinois. The College of Law is a department at the University. The

4

University is governed by a Board of Trustees, which delegates certain responsibilities to school officials, such as the Defendants in this case.

12.     Defendant, Vikram D. Amar, is the Dean of the College of Law. He is responsible for the policies and actions impacting students at the College of Law, and he is sued in his individual and official capacities.

13.     Defendant, Virginia M. Vermillion, is the Assistant Dean of Academic Affairs and Assistant Dean of Students at the College of Law. She is the former Dean of Students, and she has been primarily responsible for the discipline of students at the College of Law. She is sued in her individual and official capacities.

14.     Defendant, Verity Winship, is the Associate Dean of Academic Affairs at the College of Law. She is responsible for students and faculty in the classroom setting, and she is sued in her individual and official capacities.

15.     Defendant, Susan Landrum, is the Dean of Students at the College of Law. She is primarily responsible for disciplining students. She is sued in her individual and official capacities.

16.     Defendants, Margareth Etienne, Richard J. Ross, Robin B. Kar, Shannon M. Moritz, Lesley M. Wexler, Andrew D. Leipold, Patrick Keenan, Suja Thomas, and Kari L. Sanderson are all professors at the College of Law, including some former or current professors of Plaintiff. They possess the authority to file complaints to BIT, and they are sued in their individual and official capacities.

17.     Defendant, Jamelle Sharpe is a professor and member of the Executive Committee at the College of Law. He is a current professor of Plaintiff; he possesses the authority to file complaints to BIT, and he is sued in his individual and official capacities.

18.     Defendants, Jennifer K. Robbennolt and Eric A. Johnson, are members of the Executive Committee at the College of Law. They possess the authority to file complaints to BIT, and they are sued in their individual and official capacities.

19.     Defendants, Rachael Ahart, Justin Brown, Stephen Bryan, James Carter, Ranya Hasan, Yulee Kim, Carla Mccowan, Sue Stock, Katherine Snyder, Alexis Thompson, and Robert Wilczynski, are the members of BIT. They are responsible for enforcing BIT's authority and conducting forensic evaluations of students. They are all sued in their individual and official capacities.

20.     Defendant, Timothy L. Killeen, is the President of the University of Illinois. He is responsible for the enactment and enforcement of the University's policies. He is sued in his individual and official capacities.

21.     Defendant, Robert J. Jones, is the Vice President for the University of Illinois System and Chancellor of the University of Illinois at Urbana-Champaign. He oversees the departments under Student Affairs, including the Office of the Dean of Students, the Office for Student Conflict Resolution, and BIT. Jones is responsible for

University-wide policies, including the policies challenged here. He is sued in his individual and official capacities.

22.     Defendant, Danita M. Brown Young, is the Vice Chancellor for Student Affairs. She oversees all departments within Student Affairs, including the Office of the Dean of Students, the Office for Student Conflict Resolution, and BIT. She is sued in her individual and official capacities.

23.     Defendants, Ramón Cepeda, Tami C. Schilling, Donald J. Edwards, Joseph Gutman, Patricia B. Holmes, Naomi D. Jakobsson, Stuart C. King, Sarah Phalen, Sylvia Puente, Rafael Camacho Jr., Mohammed A. Haq, Will Formea, and Governor J.B. Pritzker are the members of the Board of Trustees, which governs the University. The Board is responsible for the adoption and authorization of policies, including the policies challenged here. The Board members are sued in their individual and official capacities.

## BACKGROUND

### I.     Plaintiff Has Statutory and Constitutional Rights on Campus

24.     "In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969). "[Students] cannot be punished merely for expressing their personal views on the school premises . . . unless school authorities have reason to believe that such expression will 'substantially'

7

interfere with the work of the school or impinge upon the rights of other students."

*Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (quoting *Tinker*, 393 U.S. at

509). Further, the University's own Student Code guarantees that "[d]iscussion and

expression of all views is permitted within the university subject only to requirements

for the maintenance of order." It also claims that "[s]upport of any cause by orderly

means that are not in violation of law and that do not disrupt the operation of the

university nor interfere with the rights of others is permitted." Yet, the school may

report a student to BIT in violation of the student's rights under the Student Code and

U.S. Constitution.

25.     The Plaintiff also has rights to due process and equal protection under the

Fifth and Fourteenth Amendments, along with federal statutory protections against

discrimination in various forms.

**II.     The University's Unlawful and Unconstitutional Acts and Policies Have Caused Concrete and Ongoing Injuries to Plaintiff**

26.     Plaintiff is a second-year student at the College of Law. He was admitted

to the College of Law in February 2021 with a full-tuition Dean's Scholarship. Plaintiff

was above the school's LSAT and GPA medians, and his GPA was significantly above

the school's 75th percentile.

27.     During the fall 2021 semester, the College of Law held several "Law 101"

events, which first-year students were required to attend once per week during the

lunch hour. During one such event, Dean Vermillion said that students should amend

their applications if needed for future bar association character and fitness exams. Vermillion said that she had "many" friends inside the Federal Bureau of Investigation ("FBI"), but that the bar associations were tougher.

28. Soon after that event, Plaintiff contacted Vermillion and arranged to amend his application. He eventually met with Vermillion in her office, where Vermillion verbally abused him and made bigoted comments about his race, religion, national origin, and ethnicity. Hard as it is to believe, Vermillion said "You f*ing middle easterners are untrustworthy." Plaintiff was flabbergasted at this. She also repeated that she had "many" friends inside the FBI. Plaintiff became concerned about discrimination because he is a Sikh male, and Sikhs have been subject to racial profiling by law enforcement. Sikhs are not Muslims or Middle Eastern—even though they are often misidentified.[1] Plaintiff did not report the comments out of fear of retaliation and concern that Vermillion would report him to her friends inside the FBI. If Plaintiff did not have a full-tuition scholarship, he would have explored a transfer.

29. Following fall 2021, Plaintiff communicated to the administration that he would consider filing capricious grading complaints against various instructors. Students have a right to file such complaints under the Student Code. *See* Student Code § 3-107. In February 2022, Deans Winship and Vermillion demanded that Plaintiff come

---

[1] *See, e.g.*, Emma Green, *The Trouble With Wearing Turbans in America*, The Atlantic (Jan. 27, 2015), https://www.theatlantic.com/politics/archive/2015/01/the-trouble-with-wearing-turbans-in-america/384832/.

to a meeting in their office. Winship used the broad "reasonable request" provision in §
1-302(g) to enforce her demand. In this meeting, they accused Plaintiff of being
"unprofessional" for wanting to file complaints. Plaintiff expressed concerns about
discrimination and improper behavior by the College of Law. Plaintiff said that he
would consider taking legal action and repeated that he would consider filing
capricious complaints as allowed by the Student Code.

30.     Plaintiff called another meeting with Deans Amar and Vermillion in
March 2022. Plaintiff repeated his concerns from the February 2022 meeting and
expressed additional concerns about retaliation. Plaintiff said that he would take legal
action if the University continued to violate his rights. Plaintiff also expressed concerns
about possible law enforcement involvement due to Vermillion's bigoted comments
and her repeated statements about her "many" friends inside the FBI.

31.     In April 2022, Vermillion filed a defamatory report about Plaintiff to BIT.
For example, Vermillion claimed (among other things), that Plaintiff made "threats"
during the March 2022 meeting and had "disjointed" thoughts. Vermillion also
invidiously characterized Plaintiff's interactions with female professors. Plaintiff
disputes the report. BIT did not reach out to Plaintiff in April or May. Officials at the
College of Law and the University have been in contact with BIT regularly regarding
Plaintiff. The College of Law provided BIT with various electronic mail and other
communications between Plaintiff and members of the University.

32.     Starting in June 2022, Plaintiff received numerous messages from BIT and College of Law officials demanding that Plaintiff speak with BIT or face discipline. The school provided no reasons as to why they wanted Plaintiff to meet with BIT beyond generalized characterizations of messages that Plaintiff had sent via the school's electronic mail system. The College of Law provided no basis to suggest that his messages were threatening or that they had caused any disruption. The College of Law has never produced any evidence from either the February 2022 or March 2022 meetings. Plaintiff declined to meet with BIT, and he denied all the allegations. Plaintiff filed several complaints about the College of Law's behavior, including a discrimination complaint against various College of Law officials. The University and the College of Law never provided Plaintiff any process to dispute Vermillion's report.

33.     Quite the opposite, the College of Law apparently took several actions based on her false statements. Plaintiff is a male. The College of Law discriminated against Plaintiff based on his sex and segregated him from members of the opposite sex at the College of Law by teaming him up with only men during projects and assignments and keeping him away from women during law review cite checks. BIT members have been present in the law building on a regular basis. Plaintiff was treated differently than other similarly situated males.

34.     The College of Law has continued to send threatening messages to Plaintiff. On October 25, 2022, the University provided Plaintiff a notice that the

University's recommended discipline for failing to meet with BIT is dismissal from the University. That was the first time Plaintiff was informed that he could be dismissed for not complying with BIT.

35.     The University ignored Plaintiff's requests to see Vermillion's April 2022 report and withheld the report from Plaintiff until October 2022. On October 28, 2022, Plaintiff saw the report for the first time when the University allowed temporary "access" to it.

36.     On November 4, 2022, Plaintiff met with Deans Amar and Winship virtually via Zoom. In this meeting, the College of Law referenced Vermillion's report and communicated that they would move to dismiss Plaintiff from the College of Law if he did not immediately speak to BIT. Defendants admitted that Vermillion sent the report to BIT in April 2022. In this meeting, Defendants also conceded that Plaintiff had made no threats and that no such evidence existed. However, they wanted Plaintiff to speak to BIT anyway based on their opinions about messages that Plaintiff had sent. Winship sent another message threatening discipline on November 14, 2022.

37.     Plaintiff is at risk of imminent and irreparable harm him via a dismissal from the College of Law and University, which would, in effect, make it impossible for him to practice law. Plaintiff's legal career literally hangs in the balance.

## LEGAL CLAIMS

### COUNT I
### Violation of the First and Fourteenth Amendments (Compelled Speech)

38. Plaintiff repeats and realleges every allegation in this Complaint.

39. "When speech is compelled . . . damage is done." *Janus*, 138 S. Ct. at 2464. "Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason, one of our landmark free speech cases said that a law commanding 'involuntary affirmation' of objected-to beliefs would require 'even more immediate and urgent grounds' than a law demanding silence." *Id.* (citations omitted).

40. Further, students at public schools do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker*, 393 U.S. at 506. Students cannot be "punished merely for expressing their personal views on the school premises . . . unless school authorities have reason to believe that such expression will 'substantially' interfere with the work of the school or impinge upon the rights of other students." *Hazelwood*, 484 U.S. at 266 (quoting *Tinker*, 393 U.S. at 509).

41. The University guidelines allow the campus community to make reports about students to BIT. BIT is then authorized to force students to speak based on those reports to justify and explain their protected speech—regardless of the legitimacy of the reports. Plaintiff does not want to speak to BIT.

42. The University policy does nothing to limit the discretion or arbitrariness of the enforcement of the policy.

13

43.     The University possesses no compelling interest in forcing students to speak without evidence that the speech is unprotected or threatens imminent harm, and the BIT process is not narrowly tailored to meet any alleged compelling interest by the University.

44.     The University is attempting to force Plaintiff to speak against his will in violation of the First Amendment. The University threatens dismissal from the school if Plaintiff does not comply.

45.     Defendants took this action under color of state law in their individual capacities and their official capacities as state government employees at the University.

## COUNT II
### Violation of the First Amendment and Fourteenth Amendments (Retaliation and Punishment for Protected Speech)

46.     Plaintiff repeats and realleges every allegation in this Complaint.

47.     "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotations and citation omitted). Further, students cannot be "punished merely for expressing their personal views on the school premises . . . unless school authorities

have reason to believe that such expression will 'substantially' interfere with the work of the school or impinge upon the rights of other students." *Hazelwood*, 484 U.S. at 266 (quoting *Tinker*, 393 U.S. at 509).

48.     The University guidelines allow the campus community to report students based on their speech—regardless of whether the student's speech was protected under the First Amendment.

49.     Plaintiff sent protected First Amendment communications to faculty and staff and said he would file complaints and lawsuits against various officials. Defendants then sent his protected speech to BIT and threatened him with discipline. Plaintiff suffered a deprivation because he now fears being reported to BIT if he speaks. Plaintiff's communications *were* the reason that the College of Law reported his communications to BIT.

50.     The University policy does nothing to limit the discretion or arbitrariness of the enforcement of the policy. The University possesses no compelling interest in stripping students of their First Amendment rights without evidence, and the BIT process is not narrowly tailored to meet any alleged compelling interest by the University.

51.     The University retaliated against Plaintiff by sending his First Amendment protected speech to BIT. The University also threatened discipline based on protected First Amendment speech. Reporting a student to BIT is a detriment.

Plaintiff suffered a detriment when the University reported him to BIT and sent his

protected speech to BIT. Thus, in addition to retaliation, the College of Law also

violated the First Amendment by sending Plaintiff's protected electronic mail

communications, as well as other protected communications to BIT, which chilled his

free speech rights.

52.     Defendants took this action under color of state law in their individual

capacities and their official capacities as state government employees at the University.

### COUNT III
### Violation of the Fifth and Fourteenth Amendments (Void-for-Vagueness and Overbreadth)

53.     Plaintiff repeats and realleges every allegation in this Complaint.

54.     An enactment is void-for-vagueness if it is not clearly defined. *See, e.g.,*

*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

55.     An enactment "is unconstitutionally vague so as to violate due process if

it: (1) does not provide a person of ordinary intelligence a reasonable opportunity to

know what is prohibited, or (2) fails to provide explicit standards to prevent arbitrary

and discriminatory enforcement by those enforcing the [enactment]." *United States v.*

*Plummer*, 581 F.3d 484, 488 (7th Cir. 2009) (internal quotations and citations omitted).

56.     If an enactment "is capable of reaching expression sheltered by the First

Amendment, the [void-for-vagueness] doctrine demands a greater degree of specificity

than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1984). An enactment may be

16

overbroad if it can reach First Amendment protected speech and can be used to chill

speech. *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39–40 (1999).

57.     The University's Student Code threatens discipline for failing to comply

with a "reasonable" directive from a University official. Student Code § 1-302(g). The

provision provides no definition or meaning. Students have no way of knowing what

counts as reasonable. The provision is vague because the University does not use the

reasonable person standard, and the school uses the provision in arbitrary and

capricious ways for a broad range of conduct.

58.     The University (and College of Law) are construing § 1-302(g) to require a

student to speak to BIT against their will.

59.     The lack of a clear standard raises the risk that the University will use the

provision arbitrarily or in a discriminatory fashion to restrict protected speech or to

punish speech that is allowed under the Student Code. The provision is overbroad

because it can reach any form of protected speech.

60.     Student Code § 1-302(g) is void-for-vagueness and it fails under the

overbreadth doctrine.

61.     Defendants enacted this provision under color of state law in their official

capacities as state government employees at the University, and enforce it, including in

this case, in their individual and official capacities.

**COUNT IV**

**Violation of Title VI and the Fourteenth Amendment (Racial, National Origin, Ethnic and Religious Discrimination)**

62.     Plaintiff repeats and realleges every allegation in this Complaint.

63.     Plaintiff is entitled a discrimination-free legal education with regards to his race, religion, national origin, and ethnicity. Plaintiff is also entitled to equal rights under the law. *See* 42 U.S.C. § 2000d (racial discrimination prohibited); 42 U.S.C. § 1981 (equal rights).

64.     Vermillion made bigoted comments about Plaintiff's race, religion, and ethnicity, and national origin. Almost incredibly, Vermillion said "You f*ing middle easterners are untrustworthy." Plaintiff was flabberghasted. Vermillion then said that she had "many" friends inside the FBI.

65.     Plaintiff filed a complaint to the University's Office of Access & Equity in July 2022. Plaintiff did not offer details out of fear of retaliation and concern that Vermillion would report him to her friends inside the FBI.

66.     The University and College of Law discriminated against Plaintiff based on his race, religion, national origin, and ethnicity, and denied him equal rights under the law.

67.     The College of Law used Plaintiff's discrimination complaint as a basis to justify why it referred Plaintiff to BIT. Thus, the College of Law retaliated against Plaintiff for filing a complaint about his discrimination experiences at the University.

68.     Defendants took this action in their individual capacities and under color of state law in their official capacities and state government employees at the University.

## COUNT V
### Violation of Title IX, and the Fourteenth Amendment (Sex Discrimination)

69.     Plaintiff repeats and realleges every allegation in this Complaint.

70.     Plaintiff is entitled a discrimination-free legal education with regards to his sex. Plaintiff is also entitled to equal rights under the law. *See* 20 U.S.C. § 1681 (sex discrimination prohibited); 42 U.S.C. § 1981 (equal rights).

71.     Vermillion made statements about Plaintiff's relationship with the female professors. Plaintiff is a male. As a result, the College of Law took actions that segregated him from the opposite sex by teaming him up only with men during projects and assignments and school activities, as well as keeping him away from women during the law review cite checks. Winship used Plaintiff's complaints about this discrimination as a basis to threaten discipline.

72.     The College of Law discriminated against Plaintiff based on his sex and deprived him of equal rights under the law by treating him differently than other similarly situated males. The College of Law also retaliated against Plaintiff for speaking up about the discrimination by sending his communications to BIT.

73.     Defendants took this action under color of state law in their individual capacities and their official capacities as state government employees at the University.

## COUNT VI
### Violation of the Fifth and Fourteenth Amendments (Procedural Due Process)

74.     Plaintiff repeats and realleges every allegation in this Complaint.

75.     Plaintiff may not be deprived of life, liberty, or property without due

process of law under the Fifth and Fourteenth Amendments.

76.     A relationship between a student and an institution of higher education is

a matter of contract. *Doe v. Purdue Univ.*, 928 F.3d 652, 661 (7th Cir. 2019). The contract

establishes a property right in said education. *Id.*

77.     Plaintiff and the College of Law formed a contract, where the two sides

agreed to comply with the Student Code. The College of Law is threatening to

discipline Plaintiff for not speaking to BIT—even though the conduct section of the

University's Student Code does not require a student to speak with BIT. Moreover, the

potential discipline for not speaking to BIT is not available in the Student Code. The

University did not communicate to Plaintiff that dismissal was a possibility until

October 25, 2022, which was more than four months into the process.

78.      Defendants are threatening to discipline Plaintiff in violation of the

school's Student Code and its contract with Plaintiff. Further, Defendants did not

provide Plaintiff any notice or a hearing.

79.     The University and College of Law deprived Plaintiff of his property

without due process of law.

80.     When evaluating claims of a deprival of liberty without due process of law, the Supreme Court has guided lower courts to apply the stigma-plus test. *Paul v. Davis*, 424 U.S. 693, 708–09 (1976).

81.     The College of Law and Vermillion sent defamatory information to BIT. Plaintiff did not receive an opportunity to defend himself from the falsehoods or to put up a defense. The College of Law presumed the truth of its own statements despite Plaintiff's repeated assertions of falsehoods.

82.     The College of Law now threatens to dismiss Plaintiff from the University for not complying with BIT's command to speak. However, its disciplinary authority allegedly arises out of another provision of the Student Code. *See* Student Code § 1-302(g) (failure to comply with a "reasonable" directive from a University official). The College of law does not threaten to discipline Plaintiff for his statements or the information that BIT received. Thus, Plaintiff will never receive any process regarding that information—even though that information resulted in BIT's demand to speak on command.

83.     The College of Law and the University have leveled out claims about Plaintiff's mental health, which can potentially impact his employment. State bar associations perform character and fitness exams. Defendants are therefore depriving Plaintiff of potential future employment without due process, and they are attempting to alter his legal status.

21

84.     Plaintiff has satisfied the stigma-plus test. Thus, the College of Law and University deprived Plaintiff of his liberty without notice or a hearing—thereby depriving him procedural due process.

85.     Defendants took this action under color of state law in their individual and their official capacities as state government employees at the University.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff John Doe respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants and grant the following relief:

- A declaratory judgment that the University's unconstitutional, arbitrary, and capricious attempts to force students to speak to BIT against their will violates the Student Code and the First and Fourteenth Amendments.

- A declaratory judgment that the University's attempts to force Plaintiff to speak to BIT against his will violates the Student Code and the First and Fourteenth Amendments.

- A declaratory judgment that the University's unconstitutional, arbitrary, and capricious policy of reporting protected student speech to BIT violates the Student Code and the First and Fourteenth Amendments.

- A declaratory judgment that the University's policy of reporting Plaintiff's protected student speech to BIT violates the Student Code and the First and Fourteenth Amendments.

- A declaratory judgment that Student Code § 1-302(g) is void-for-vagueness and fails under the overbreadth doctrine.

- A declaratory judgment that the College of Law discriminated against Plaintiff based on his race, religion, national origin, and ethnicity.

- A declaratory judgment that the College of Law discriminated against Plaintiff based on his sex.

- A declaratory judgment that Defendants deprived Plaintiff of his procedural due process rights under the Student Code and the Fifth and Fourteenth Amendments.

- A permanent injunction banning the University from using unconstitutional, arbitrary, and capricious attempts to force students to speak to BIT against their will.

- A permanent injunction banning the University from disciplining Plaintiff for refusing to speak to BIT against his will.

- A permanent injunction banning the University from arbitrarily and capriciously sending protected student speech to BIT in violation of the Student Code and the U.S. Constitution.

- A permanent injunction banning the University from sending Plaintiff's protected student speech to BIT.

- A permanent injunction banning the University from arbitrarily and capriciously disciplining students for failing to comply with a "reasonable" directive from a University official under Student Code § 1-302(g).

- A permanent injunction banning the University from disciplining Plaintiff for failing to comply with a "reasonable" directive from a University official under Student Code § 1-302(g).

- An order requiring the University to erase Vermillion's false statements about Plaintiff.

- A permanent injunction banning the University from sending reports to BIT about any student in violation of the Student Code without first providing the student with procedural due process.

- A permanent injunction banning the University from sending reports to BIT about Plaintiff without first providing Plaintiff with procedural due process.

- An order requiring the College of Law to publicly apologize to Plaintiff in front of the entire College of Law student body.

- A preliminary injunction granting the above relief during the pending adjudication of this action.

- A temporary restraining order against the University during the pending

  adjudication of this action and motion for preliminary injunction.

- $200,000 for Plaintiff's reasonable damages for violation of his

  constitutional rights and noneconomic damages; and

- Costs, and expenses, including attorney's fees in accordance with

  applicable laws and 42 U.S.C. § 1988.

- Any and all other relief that the Court may deem as just and proper.

Dated:  November 18, 2022                          Respectfully submitted,

                                                   /s/Justin Schwartz
                                                   Justin Schwartz
                                                   ARDC No. 627328
                                                   1723 Devon Ave. # 607882
                                                   Chicago, IL 60660
                                                   (847) 687-5477
                                                   justinschwartzlaw@gmail.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT URBANA**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | No. 2:22-cv-0225 |
| VIKRAM D. AMAR. et. al. | ) | |
| | ) | |

<u>VERIFICATION</u>

I, Justin Schwartz, an attorney admitted to the Central District District of Illinois, verify

that the facts stated  in the allegations in the attached Complaint are true and correct to

the best of my knowledge, information, and belief. I declare under penalty of perjury

that the foregoing is true and correct.


Dated:  November 18, 2022                         Respectfully submitted,

                                                  <u>/s/Justin Schwartz</u>
                                                  Justin Schwartz
                                                  ARDC No. 627328
                                                  1723 Devon Ave. # 607882
                                                  Chicago, IL 60660
                                                  (847) 687-5477
                                                  justinschwartzlaw@gmail.com