E-FILED
Monday, 28 November, 2022  04:05:44 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **2:22-cv-02252-SEM-EIL** |
| **v.** | ) | |
| | ) | **Hon. Sue E. Myerscough** |
| **VIKRAM D. AMAR, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' RESPONSE MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

One of the highest priorities of any university is protecting the safety and well-being of its students, faculty, staff, and visitors. The University of Illinois at Urbana-Champaign (the "University"), like many colleges and universities across the country, has a Behavioral Intervention Team ("BIT") to serve as the "centralized body for discussion and action regarding students exhibiting aberrant, dangerous, or threatening behavior that might impact the safety or well-being of the campus community" and which is "founded on the principles of early intervention and proactive engagement to prevent violence and provide supportive services." *See* BIT Program Summary, Univ. of Ill. (accessed Nov. 30, 2022), available at www.illinois.edu/community-of-care/behavioral-intervention-team. Members of the University community are encouraged to report persons to BIT who exhibit concerning behavior, including (as especially pertinent here) paranoia and "persecutory or delusional beliefs." *Id.* When such a report is made, BIT members then meet with the subject of the report to discuss the situation, understand the subject's perspective, and assess if any further intervention is warranted. Referrals to BIT are not disciplinary referrals, and BIT does not impose discipline on students. The

University is required by law both to have a BIT program and to compel its students to cooperate with the BIT process.

Plaintiff, a student in the University's College of Law, has repeatedly made paranoid and delusional statements and claims, and behaved aggressively and erratically, resulting in several faculty members, students and others expressing concerns about him which were reported to BIT earlier this year. But since then, Plaintiff has refused multiple requests to speak with BIT members about these issues, denying the University the ability to intervene and assess whether (and to what extent) this student may pose a threat to the University community or himself.

After disregarding an extended and final deadline to speak with BIT, the College of Law recently initiated a disciplinary proceeding under its Honor Code against Plaintiff, not for any of his behavior or actions which were reported to BIT but rather for his improper refusal to cooperate with the BIT process and simply engage and speak with a BIT member. Under the College of Law's Honor Code, Plaintiff is permitted to make written submissions, to be represented by counsel, to present evidence and examine witnesses at a hearing, and to appeal any disciplinary finding made in this proceeding.

Although Plaintiff has not been disciplined and the Honor Code process lies ahead-- and it is presently uncertain whether any discipline will be imposed against him at the conclusion of the robust Honor Code process -- he seeks a preliminary injunction blocking the disciplinary proceeding from going forward and otherwise preventing the University from requiring him to speak with a BIT member. But as discussed in detail below, none of the requirements for the extraordinary remedy of preliminary injunction are present here: Plaintiff has an adequate remedy at law to challenge any discipline that may be imposed upon him *after* the Honor Code process concludes; directly on-point caselaw rejects the proposition that participating in a disciplinary

process constitutes irreparable harm; Plaintiff's First Amendment-based legal claims are baseless and he has no likelihood of success on them; and the University's important and legally required responsibilities to protect the University community from potential harm would be seriously undermined by a ruling that the University cannot engage with students displaying erratic or concerning behavior and that such persons have the option to refuse to cooperate with BIT without any consequence. Defendants[1] thus respectfully request that Plaintiff's motion for a preliminary injunction be denied in its entirety.

## RELEVANT BACKGROUND

Plaintiff is a student in the University's College of Law. During his tenure at the University, numerous faculty members, students and others have repeatedly been concerned by his behavior. In March 2022, a formal report about Plaintiff was made to BIT which stated:

> First year Law Student, [Plaintiff's name omitted], was aggressive in his communications with his female fall law professors, including multiple combative emails with one professor in particular. After exams, the accusatory emails continued to that professor and to others. This semester, he has continued his aggressive emails to one female professor and sent aggressive emails to other female professors on his schedule. In person meetings between administration and the student to address his behavior resulted in his use of aggressive and combative tones and communication. Immediately thereafter he sent another combative communication to a female professor. Most recently, he sent communications to a student's significant other accusing her of making comments about him even though she is not a law student and did not know him. Then to her boyfriend that is a classmate he made comments that were nonsensical alleging FBI conspiracies with the College and other erratic behavior. A meeting with the Deans was held with him and he responded erratically and with an aggressive tone and with threats. There was a lengthy discussion about his belief that FBI had infiltrated the [law school's] IT services. He also issued threats stating that the college was heading into "dangerous territory" and that there would be harm to the institution. When asked about these threats, he became agitated and loud, claiming his words were

---

[1] Given the recent filing of this case and that service has not been made on any of the numerous Defendants specifically named or identified by role, representation arrangements have to date only been made with some of the Defendants. Counsel has appeared for Defendants Amar, Winship, Landrum, Brown, and Snyder (*see* Doc. 3), and this Opposition is filed on their behalf. These Defendants have been directly involved in the pre-suit dealings with Plaintiff and/or his BIT referral and can adequately represent the interests of all Defendants on the injunction issues presently before the Court. Many of the Defendants sued here by Plaintiff had no involvement of any kind in this matter, and there otherwise is no legal basis for asserting claims against them. If Plaintiff does not promptly dismiss these improperly joined parties, Defendants will seek sanctions under Rule 11 against Plaintiff and his counsel for improperly naming them in this case.

twisted. He went on to refine words as harm and danger through "peaceful actions through the law."

*See* Plaintiff's redacted BIT record, attached hereto as Exhibit A.[2]

Following this initial referral to BIT, numerous requests were made over the next seven months for Plaintiff to meet with BIT members. *See,* Exhibit A. Plaintiff refused all of these requests, even after being informed that his refusal to cooperate with the BIT process would result in a referral for possible disciplinary action. *Id.* While the efforts to secure his cooperation were ongoing, Plaintiff doubled down and elaborated on his paranoid delusional statements in, among other things, an internal complaint in which Plaintiff accused the law school's dean of conspiring with "law enforcement agents" to "go after that bad student [Plaintiff]" in order to advance the Dean's career and personal standing. Of course, neither the Dean nor anyone else at the law school has ever been contacted by, or worked with, the FBI or any other law enforcement agency to surveil or otherwise "go after" Plaintiff. A redacted copy of Plaintiff's September 16, 2022 internal complaint – a compelling, independent basis for BIT intervention with this student -- is attached hereto as Exhibit B.

Law School Deans recently met with Plaintiff and his counsel and gave Plaintiff a final opportunity to meet with BIT members by November 18, 2022 (*see,* Exhibit C hereto), but Plaintiff again refused. On November 21, 2022, the next business day after that deadline had passed, the

---

[2] Defendants are redacting the names of persons who confidentially expressed concerns about Plaintiff's behavior but are not redacting Plaintiff's name because Plaintiff himself has filed several Complaint exhibits which contain his name and other identifying information about him. (*See* Docs. 1-3, 1-6, 1-7, and 5-1) Although he identifies himself as a John Doe in his Complaint and attached a document entitled "Motion for Leave to File as John Doe and to Seal Record" as an unreferenced exhibit to that pleading (*see* Doc. 1-2), Plaintiff has made no effort to keep his name out of the public record through simple exhibit redactions, thus Defendants will not do so either. It was procedurally improper for Plaintiff to attach a motion as a Complaint exhibit, as opposed to filing it as a standalone motion, and he appears to have done so to delay a ruling on the John Doe issue until after a ruling on the preliminary injunction issue. Further, Plaintiff has waived this issue by making filings which identify him. Finally, Defendants oppose his request to proceed under a pseudonym as improper under governing Seventh Circuit caselaw. Defendants specifically address the pseudonym issue, including that it should be decided at the outset of this case before any rulings of substance, later in this Memorandum.

University served a Formal Notice of Possible Disciplinary Violations (attached hereto as Exhibit D) on Plaintiff, attaching the College of Law's Honor Code (attached hereto as Exhibit E) and informing him of his procedural rights thereunder.

Plaintiff filed his Complaint in this matter, along with a motion seeking a temporary restraining order and a preliminary injunction, on November 18, 2022. *See* Docs. 1, 2. That same day, Plaintiff sent an email to Deans Amar and Winship characterizing his lawsuit as "an early Christmas gift" and bragging that he "drafted a significant portion of the memorandum." *See* Plaintiff's November 18, 2022, Email ("Next Steps – Lawsuit (Early Christmas Present)"), attached hereto as Exhibit F.

On November 22, 2022, this Court denied the portion of Plaintiff's Motion seeking a temporary restraining order, directed Defendants to file their opposition brief by November 28, 2022, and set this matter for a preliminary injunction hearing on November 30, 2022. *See* Doc. 4.

## ARGUMENT

### I.   Legal Standard

"To obtain a preliminary injunction, a plaintiff must show that: (1) without this relief, it will suffer 'irreparable harm'; (2) 'traditional legal remedies would be inadequate'; and (3) it has some likelihood of prevailing on the merits of its claims." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020) (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018)). The plaintiff "bears the burden of persuasion" with regard to each factor. *Cox v. City of Chi.*, 868 F.2d 217, 222 (7th Cir. 1989). If the plaintiff fails to meet even one of the prerequisites, then the injunction must be denied. *Id.* As the Seventh Circuit has stated, "[a] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Goodman v. Ill. Dep't Fin. & Prof'l*

*Reg.*, 430 F.3d 432, 437 (7th Cir. 2005) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original). "The moving party's likelihood of prevailing on the merits must exceed a mere possibility of success." *DM Trans, LLC v. Scott*, 38 F.4th 608, 617 (7th Cir. 2022) (quotations omitted). Harm is irreparable if legal remedies available to the movant are inadequate, meaning they are seriously deficient as compared to the harm suffered. *Id.* at 618 (citing *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021). If the Court determines that the plaintiff has established the initial preliminary injunction prerequisites, then the Court must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm the moving party will suffer if relief is denied. *Speech First, Inc.*, 968 F.3d at 637 (quotations omitted).

## II.    The Court Should Deny Plaintiff's Motion for a Preliminary Injunction in its Entirety.

Plaintiff has failed to satisfy his burden with respect to any of the elements required for the extraordinary injunctive relief he seeks. Plaintiff has failed to make a clear showing that he will face immediate irreparable harm, failed to show how any harm which may befall him outweighs the harm to the Defendants, and fails to show a likelihood of success on the merits. For these reasons, Plaintiff's motion should be denied.

### A.  Plaintiff Has Not Shown Irreparable Harm.

Here, Plaintiff cannot show that he would suffer irreparable harm by being required to meet with the University's BIT. Notably, the process applicable to BIT is not disciplinary in nature, and Plaintiff could have avoided the disciplinary proceedings being initiated against him simply by meeting with BIT. In any event, as detailed below, several courts have held that even requiring collegiate students to engage in outright misconduct proceedings simply does not amount to irreparable harm. Indeed, "[i]rreparable harm is harm that cannot be fully rectified by the final

judgment after trial.'" *See e.g., Doe v. Univ. of Chi.*, No. 16 C 08298, 2017 WL 818859 at *3 (N.D. Ill. Mar. 2, 2017) (citing *Stuller v. Steak N Shake Enters.*, 695 F. 3d 676, 678 (7th Cir. 2012)). A court must not issue a preliminary injunction based "only on a *possibility* of irreparable harm," but may only do so "upon a *clear showing* that plaintiff is entitled to such relief." *Id.* (citing *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008)) (emphasis in original). Furthermore, irreparable harm must be "imminent." *Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 844 (7th Cir. 2005). Plaintiff cannot satisfy these legal standards and, as a result, the present motion should be denied.

### 1.  *Plaintiff Fails to Make a Clear Showing of Irreparable Harm.*

Courts have found that engaging in a student disciplinary process does not amount to irreparable harm. *See e.g., Doe v. Univ. of Chicago*, No. 16 C 08298, 2017 WL 818859 at *7 (N.D. Ill. Mar. 2, 2017); *Doe v. Ohio State Univ.*, 136 F. Supp. 3d 854, 870 (S.D. Ohio 2016); *Noakes v. Case Western Reserve Univ.*, No. 1:21-cv-1776, 2021 WL 4441608 at *11 (N.D. Ohio Sept. 28, 2021)(denying student-plaintiff's motion for preliminary injunction because the harm plaintiff alleged would result from the investigation was "speculative, as the investigation [had] not yet begun and no findings [had] been made."). In *Ohio State*, the court denied the plaintiff's motion for a preliminary injunction to prevent "a preliminary meeting with the officials of [the university] to discuss alleged infractions of its Student Code of Conduct." 136 F. Supp. 3d at 860. There, as here, the BIT meeting requirement is not a "true disciplinary process," no disciplinary findings have been made, and "the production of disciplinary records by [the university] is not an irreparable injury." *Id.* at 864, 870. The court characterized Plaintiff's concerns as "unripe" because "the hardship to the parties [would] be minimal" if the university continued with disciplinary proceedings, and the plaintiff would have the opportunity to address his concerns via the university appellate process or litigation when the factual record was developed. *Id.* at 864.

Like *Ohio State*, in *University of Chicago*, the court denied a student-plaintiff's motion seeking a preliminary injunction to "restrain the University from subjecting him to its disciplinary process." *Id*. at *2. The court stated that the University's decision to begin engaging in the disciplinary process created "injuries too speculative to constitute irreparable harm." *Id*. at *5. Further, the court emphasized the speculative nature of the harm by noting that "if a hearing is eventually held, we do not know that harm will result; a tribunal might very well clear [Plaintiff] of any wrongdoing." *Id*.

Just as the plaintiffs in *Ohio State* and *University of Chicago* could not meet the irreparable harm standard, neither can Plaintiff here. As a preliminary matter, if a disciplinary process cannot form the basis of irreparable harm, neither can Plaintiff's meeting with BIT which is not disciplinary, but rather a fact gathering conversation. If disciplinary proceedings cannot form the basis of an irreparable injury, neither can a simple conversation. *See e.g. Ohio State*, 136 F. Supp. 3d at 870. Although Plaintiff's Complaint attempts to characterize his current situation as being "forced to speak to BIT against his will" or expulsion from the law school, in reality, the stakes are much lower. Plaintiff may either agree to meet with BIT, which Plaintiff concedes is "not disciplinary in nature," or Plaintiff may advance his positions and defenses in the Code of Honor disciplinary process. In either scenario, Plaintiff suffers no irreparable harm.

Plaintiff has failed to allege how engaging in a conversation with BIT would harm him irreparably. In fact, Plaintiff has offered no sensible reasons why he was unwilling to speak with BIT in the first place. Plaintiff admits that BIT is a non-disciplinary process intended to prevent violence and provide supportive services. Doc. 2-2, at 14; Doc. 1, ¶ 3. Further, Plaintiff acknowledges that he met with different University officials to discuss the very same matters that would be addressed at BIT. Doc. 1, ¶ 36. After making numerous attempts over several months to

8

encourage Plaintiff to meet with BIT, the University presented Plaintiff with a choice. Doc. 1, ¶¶ 29, 32, 36. Plaintiff's irrational decision not to meet with BIT is the sole cause of any "irreparable harm" he now claims to face.

Since Plaintiff has chosen to flout the College of Law Honor Code and Code of Student Responsibility and refuse to speak to BIT, the University has initiated a disciplinary proceeding against him. As noted earlier, the Honor Code disciplinary process affords Plaintiff the right to formally reply to the charges, to be represented by counsel, to submit evidence and question witnesses at a hearing, and the right to appeal. The outcome of the disciplinary proceeding could be one of any number of possibilities including: "reprimand of official record," "conduct probation," "suspension," "dismissal," or no discipline at all. Honor Code § 4.05. Because the University disciplinary process has only just begun, with no determination having been made, Plaintiff's imagined injuries are inherently speculative. Therefore, Plaintiff has failed to make a clear showing that he would suffer harm if he engaged in the university disciplinary process, and his motion for a preliminary injunction must fail.

### 2. *Plaintiff Fails to Establish Imminent Harm.*

Not only does Plaintiff fail to make a clear showing of irreparable harm, he fails to so much as allege any kind of imminent harm. Defendants have given Plaintiff notice that he has until November 29, 2022, to decide if he will reply to the formal notice of possible disciplinary violations. *See* Ex. D. Further, if Plaintiff decides he wants to submit a formal response, an even later deadline will be set by the Associate Dean for Academic Affairs. *Id*. Pursuant to the Honor Code, an investigation is conducted before any hearing is scheduled, and a formal hearing cannot be held any sooner than ten business days following the date of the Formal Charge. Exhibit E, Honor Code § 6.08. And, after a hearing and a decision is rendered, Plaintiff has the right to appeal

any adverse finding against him. Therefore, as Plaintiff's alleged harm is far from imminent, much less absolute or certain, he fails to make a showing capable of sustain the instant motion.

### 3.  *The Balance of Harms Undoubtedly Favors Defendants.*

Even if this Court were to determine that Plaintiff has established alleged imminent irreparable harm -- and he has not -- Plaintiff's motion still must be denied. The Court must weigh "the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Speech First*, 968 F.3d at 637. Here, Plaintiff's alleged harm pales in comparison to the harm the University would suffer if enjoined from enforcing cooperation with the BIT process. In Illinois, institutions of higher education have a legal obligation not just to evaluate threats to campus safety under the Campus Security Enhancement Act, but also to compel implicated persons to cooperate in such efforts. *See* 110 Ill. Comp. Stat. § 12/1 *et seq.*; Ill. Admin. Code tit. 29, § 305 *et seq.* In fact, this section of the Administrative Code expressly provides that **"[a]ll areas of the campus community should be required to cooperate with requests from the threat assessment team relative to successfully monitoring any threatening behavior."** *Id.* at §305.80(d)(emphasis supplied). Put simply, these BIT interviews are not optional or a tool used to meddle in the lives of individual students. They are statutorily mandated, and obviously based on compelling public policy safety considerations. These BIT interviews are not mental health evaluations, as Plaintiff falsely claims, but rather an information-gathering opportunity which allows the University to understand the situation and provide resources or make other referrals as warranted. By granting Plaintiff's motion, the Court would be prohibiting the University from assessing and supporting at risk students who may or may not pose a threat to themselves or others. Without the opportunity to check on students of concern, and with no authority to compel cooperation in the BIT process, the University would not only be violating

Illinois law, but also would be potentially placing its entire campus community in danger. That risk for both the University and the members of its community far, far outweighs any alleged, speculative harm that could be suffered by Plaintiff from engaging in a conversation with BIT that he admits to already have had with his law school Deans.

### B.  Plaintiff Has No Likelihood of Success on the Merits.

#### 1.  *Defendants Are Legally Obligated to Assess Plaintiff's Behavior via the Behavioral Intervention Team.*

Plaintiff claims that Defendants have violated the law for requiring him to speak with BIT; however, as noted above the University BIT is legally obligated to speak with Plaintiff. The Illinois Campus Security Enhancement Act obligates institutions of higher education to "develop an inter-disciplinary and multi-jurisdictional campus violence prevention plan." 110 Ill. Comp. Stat. § 12/20. The regulations specifically require institutions to develop a "Campus Threat Assessment Team" which must conduct threat assessments for "*aberrant*, dangerous, or *threatening* behavior on campus" and offer "guidance and best practices." Ill. Admin. Code tit. 29, § 305.80 (emphasis added). Based on this legal requirement, the University developed BIT, which addresses "students exhibiting aberrant, dangerous, or threatening behavior." *See* prior cite to the University's BIT website.

Here, the University received numerous reports that Plaintiff had displayed both aberrant and threatening behavior. One complaint alleged that Plaintiff believed the "FBI had infiltrated the university to secure his records, had purchased buildings around his apartment for surveillance of him, and had infiltrated the IT services." *See* Ex. A. This same report stated that Plaintiff had issued threats and "that there would be harm to the institution." *Id*. Another report was that Plaintiff had engaged in "paranoia" and "strange behavior" directed towards individuals both within and outside of the University College of Law community. *Id.* Plaintiff's delusional and conspiratorial

11

texts to a student and his girlfriend threatened to involve them in legal proceedings and accused them of being part of the conspiracy against him were threatening and concerned them enough to report them. (*Id.*, "This is not the first sign of paranoia or strange behavior directed by this individual towards my significant other and our group of friends at the College of Law … this feels uncomfortable and concerning") And Plaintiff's bizarre, delusional complaint about Dean Amar (Ex. B) speaks for itself in terms of whether there is a good faith basis here for BIT involvement. Because these reports described Plaintiff's behavior as both aberrant and threatening, Defendants had and continue to have a legal obligation to require Plaintiff to cooperate in the BIT process.

## 2.   *Plaintiff's First Amendment Claims Are Spurious and Without Merit.*

To obtain a preliminary injunction, Plaintiff must "demonstrate that [his] claim has some likelihood of success on the merits, not merely a better than negligible chance." *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 598 (7th Cir. 2022) (quoting *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020)). Here, Plaintiff's Complaint and injunction motion repeatedly refers to his statements as "protected First Amendment[3] speech," but he carefully avoids telling the Court what those statements actually were; crucially, it was Plaintiff's "bizarre" and "disjointed" rants and the aggressive way he has communicated them, and not any political or other opinion he has expressed, that has resulted in so many reports about his behavior and triggered the need for BIT to assess him. In short, Plaintiff fails to establish that his First Amendment claims are likely to succeed because, in requiring that Plaintiff meet with BIT, the University is not regulating his speech at all, a necessary predicate to each of the causes of action alleged in Counts I (compelled speech), II (retaliation), and III (void-for-vagueness and overbreadth).

---

[3] Plaintiff's preliminary injunction filings focus solely on his First Amendment claims and do not develop any arguments or cite any authority concerning his discrimination and due process claims. Hence, Defendants will not address those other claims here, other than to note that Plaintiff has not presented any evidence of discrimination and ignores the full disciplinary process available to him under the Honor Code.

Plaintiff claims that the University is violating his First Amendment rights by requiring him to meet with BIT following reports that he was exhibiting concerning behavior. Doc. 1, ¶ 31. Plaintiff has no likelihood of succeeding on this compelled-speech claim because, according to his own allegations, the University is not compelling that he express or convey any particular message of the government or a third-party. *See Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 61–62, 126 S. Ct. 1297, 1308, 164 L. Ed. 2d 156 (2006). In *Rumsfeld*, the Supreme Court held that the Solomon Amendment—which required recipients of federal funds to provide military recruiters with equal access to students and facilities—did not amount to compelled speech even though "recruiting assistance provided by the schools often includes elements of speech" (such as sending emails or posting notices on a recruiter's behalf). *Id.* at 62. The Supreme Court ruled that there was no First Amendment violation because the alleged "compelled speech" was "plainly incidental to the Solomon Amendment's regulation of conduct." *Id.* (emphasis added). The same is true in this case. The University is merely requiring Plaintiff to meet with BIT, but the University is not telling Plaintiff what to say or not say during that conversation. It may be true that Plaintiff's failure to engage with BIT during any such meeting might factor into BIT's assessment of him— obviously, a refusal to provide an explanation or justification for aggressive, delusional, and paranoid rants might bear on BIT's assessment of where these rants are coming from and what they might reasonably lead to. But at no time and in no way has BIT or any other University official directed, pressured, or otherwise required Plaintiff to express any particular point of view. *But cf. Wooley v. Maynard*, 430 U.S. 705, 717 (1977) (driver being improperly forced to be the vessel of the government's message); *W. Va. v. Barnette*, 319 U.S. 624, 642 (1943) (student being forced to affirm beliefs he did not hold). Indeed, the whole point of the BIT process is to ascertain Plaintiff's

perspective on the circumstances leading to the concerns raised by reporting parties. He is not being asked to convey any message other than his own, genuine views.

Certainly, attaching negative consequences to a university student's failure to engage in a reasonable educational or behavioral assessment process, absent any requirement that the student express a particular viewpoint, cannot violate the First Amendment. If it did, a school could not deny an applicant admission for failing to submit an admissions essay or show up to a scheduled interview. Professors could not require class participation or submission of a final paper as prerequisites for obtaining course credit. A state could not deny someone bar admission for not answering questions on the bar exam. Requiring individuals to provide information (that is, to speak) in order to obtain benefits—whether they be admission, academic credit, good standing on campus, or professional licensure—simply cannot implicate the First Amendment when the individuals are not being asked to utter any opinions other than their own.

Plaintiff relies on *Miller v. Mitchell*, a case which is completely inapposite. No. 3:09CV540, 2010 WL 1779925 (M.D. Pa. Apr. 30, 2010). The facts of *Miller*, an unreported opinion from a Pennsylvania district court, are highly distinguishable. The five-week "education program" at issue in *Miller* required the plaintiffs to "write a paper about 'how their actions were wrong.'" *Miller v. Mitchell*, No. 3:09CV540, 2010 WL 1779925, at *4 (M.D. Pa. Apr. 30, 2010). Since the plaintiffs did not believe their actions were, in fact, wrong, they contended that the paper was compelled speech in violation of the First Amendment. *Id.* In other words, the First Amendment was implicated because the *Miller* plaintiffs were required to express beliefs that they did not adhere to, not because they were required to attend a program and provide information. Here, Plaintiff has not alleged that he is being required to express any particular belief that he does not genuinely hold at the BIT meeting. He instead alleges that his First Amendment rights were

violated by requiring him to meet with BIT at all. *Janus v. AFSCME,* another case cited by Plaintiff, is also distinguishable, as the plaintiff in that case had to pay mandatory union fees, which were used to support political activities and viewpoints that he specifically opposed. 201 L. Ed. 2d 924, 138 S. Ct. 2448 (2018). Plaintiff has not alleged that, by requiring him to meet with BIT, the University was requiring him to "subsidize private speech on matters of substantial public concern." *Id.,* 138 S. Ct. at 2460. Plaintiff has not established that the First Amendment claims brought in Counts I, II, and III of his Complaint are likely to succeed on the merits because the very few Supreme Court cases finding that government has impermissibly compelled speech involve instances in which the government is requiring individuals to express a message that is contrary to their actual beliefs. *See, e.g., Nat'l Inst. of Family & Life Advocates v. Beccera*, 201 L. Ed. 2d 835, 138 S. Ct. 2361, 2378–79 (2018) (Kennedy, J., concurring). The present situation does not involve anything of the kind.

Further, while Plaintiff claims that the BIT program is vague and overly broad in its scope, the BIT program doesn't regulate or prohibit speech in any way or otherwise implicate the First Amendment. Plaintiff is not facing discipline for anything he said, but rather for refusing intervention after delusional statements and aggressive behavior made others uncomfortable and concerned that he may pose a safety risk to himself or the University community.

Finally, Plaintiff is unlikely to succeed on the merits of his First Amendment claims because Defendants are entitled to qualified immunity. Qualified immunity protects persons who perform discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Crue v. Aiken*, 370 F.3d 668, 680 (7th Cir. 2004). "The burden in establishing that a right is clearly established falls on the plaintiff." *Id.* (citing *Gregorich v. Lund*, 54 F.3d 410 (7th Cir. 1995)).

"Whether a right is clearly established depends on the particular facts of the case." *Id.* Defendants are unaware and unable, after extensive research, to find any legal authority suggesting that requiring a student to meet with school officials as part of a reasonable educational or behavioral assessment process constitutes a violation of established statutory or constitutional rights. Even a cursory review of the authority cited by Plaintiff shows that he has failed to carry his burden. Thus, Defendants are entitled to qualified immunity.

### C.  Defendants' Decision to Follow Procedure is an Academic Decision Entitled to Judicial Deference.

In addition to the reasons set forth above, Plaintiff has not established a likelihood of success on the merits because Defendants' decision to enforce the College of Law Honor Code and Code of Student Responsibility is entitled to judicial deference. As courts in the Seventh Circuit have consistently observed, the academic decisions of universities are entitled to significant deference and cannot be disturbed absent evidence of arbitrary and capricious conduct. *See Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 858 (7th Cir. 2019) (applying academic deference to student disciplinary decisions and finding that defendant college would not be liable "even if we find it exercised its academic judgment unwisely; rather it must have disciplined a student without any rational basis"); *see also Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978).

Courts grant universities this deference not only in purely academic decisions, but also in decisions relating to student discipline. *See e.g. Columbia Coll. Chi.*, 933 F.3d at 858 (applying deference to the university's decision in a Title IX proceeding); *DiPierna v. Chi. Sch. of Pro. Psych.*, 893 F. 3d 1001, 1003 (7th Cir. 2018) (finding that "courts are reluctant to interfere with the academic affairs and regulation of student conduct in a private university settling.")(citing *Raethz v. Aurora Univ.*, 805 N.E. 2d 696, 699 (Ill. App. 2004)); *Doe v. Loyola Univ. Chi.*, No. 18-cv-7335, 2022 WL 4535090 at *36 (N.D. Ill. Sept. 28, 2022)(emphasizing that "the discretion

16

[granted to universities] extends beyond academic decisions – it covers the 'regulation of student conduct,' too."). Here, Defendants have a rational basis for compelling Plaintiff to speak with BIT – ensuring campus safety – and for initiating discipline against him for refusing to do so. Both public policy and obligations under Illinois law support Defendants' decisions, which are academic judgments entitled to judicial deference.

### D. Plaintiff's Motion to Proceed as a John Doe and to Seal the Record Should Be Denied.

As noted above, Plaintiff seeks to proceed in this case under a John Doe pseudonym but buries that request as an unreferenced exhibit to his Complaint (*see,* Doc. 1-2, described by him on the docket as "Notice Regarding Privacy Issues") as opposed to expressly identifying and filing a standalone motion seeking this extraordinary relief. As a result, his John Doe motion is not readily apparent on the docket, and Plaintiff is pursuing a ruling on his preliminary injunction motion before the threshold issue of whether he may sue anonymously has been decided. Defendants oppose Plaintiff proceeding as a John Doe, and further oppose Plaintiff's tactic of testing the waters on this Court's injunction rulings before risking identifying himself as the Plaintiff bringing this case.

Federal Rule 10(a) provides that every complaint "must name all the parties." Plaintiff has not done so here; instead, he seeks to proceed anonymously as a John Doe. This effort is improper. As the Seventh Circuit has stated:

> We have repeatedly voiced our disfavor of parties proceeding anonymously, as anonymous litigation runs counter to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes. To proceed anonymously, a party must demonstrate "**exceptional circumstances**" that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity.

*Doe v. Village of Deerfield*, 819 F. 3d 372, 377 (7th Cir. 2016) (citing *Doe v. City of Chi.*, 360 F. 3d 667 (7th Cir. 2004); *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F. 3d 869 (7th Cir. 1997)) (emphasis added). The Seventh Circuit also found that a plaintiff's "fear of disclosure of his medical and psychiatric information through litigation was insufficient to warrant the plaintiff's anonymity," thus emphasizing just how high the standard is. *Village of Deerfield*, 819 F. 3d at 377. Situations meeting the exceptionally high standard "include protecting the identities of 'children, rape victims, and other particularly vulnerable parties.'" *Id.* None of those types of exceptional circumstances are even remotely involved here.

The claims in this case plainly do not present exceptional circumstances warranting Plaintiff being permitted to sue as a John Doe. Plaintiff is an adult, not a child, who has been referred to BIT. As Plaintiff points out, individuals experiencing a wide range of life events may be referred to BIT. All that a referral to BIT demonstrates is that Defendants have questions for Plaintiff. The referral does not establish that Plaintiff is dangerous, suffering from mental illness, or part of any other vulnerable group. Therefore, Plaintiff has failed to demonstrate that his circumstances are exceptional such that anonymity is warranted. Because Plaintiff has failed to demonstrate anonymity is warranted, this Court should not hamper the right of the public to open judicial proceedings and should thus deny Plaintiff's motion to proceed as a John Doe. This issue should be decided either before or at the same time the Court rules on Plaintiff's preliminary injunction motion.

Despite claiming that he should be permitted to litigate this case anonymously, Plaintiff has already made court filings which disclose his name, address and other identifying information. *See* Docs. 1-3, 1-6, 1-7, and 5-1. Having placed his name and status as Plaintiff into the public

record without even taking simple steps to redact this information, Plaintiff can hardly claim that exceptional circumstances exist here to hide his status as the Plaintiff who brought this case.

Finally, Plaintiff's request to seal the entire court file in this case is not supported by any authority and has no legal basis whatsoever. That request should be denied as well.

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request that Plaintiff's motion for a preliminary injunction be denied in its entirety, and that Plaintiff's request to proceed as a John Doe and to seal the court file be denied and the Clerk directed to modify the docket to reflect Plaintiff's name.

Dated: November 28, 2022    VIKRAM AMAR, VERITY WINSHIP, SUSAN
              LANDRUM, JUSTIN BROWN, and KATHERINE
              SNYDER


              By: /s/ *Michael D. Hayes*
               Counsel for Defendants

Michael D. Hayes
michael.hayes@huschblackwell.com
HUSCH BLACKWELL, LLP
120 S. Riverside Plaza
Suite 2200
Chicago, Illinois 60606
(312)341-9830

## **LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1, I hereby certify that based on the word count feature of the

Microsoft Word word processing system used to prepare this Memorandum, this document

complies with Local Rule 7.1(B)(4)(b)(2) in that it contains a total of 6,470 words, less than the

7,000 word limit.

/s/ *Michael D. Hayes*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing **Defendants' Response Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction** was served on all counsel of record as a result of the CM/ECF filing on November 28, 2022 before the hour of 5:00 pm CST.

*/s/ Michael D. Hayes*