No. 22-3211

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

---

JOHN DOE,

Plaintiff-Appellant,

v.

VIKRAM D. AMAR, et al.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Central District of Illinois
Case No. 2:22-cv-02252
Hon. Sue E. Myerscough

---

PLAINTIFF-APPELLANT'S EMERGENCY MOTION
FOR AN INJUNCTION PENDING APPEAL
OR SUMMARY REVERSAL

---

Justin Schwartz
ARDC No. 627328
1723 Devon Ave. # 607882
Chicago, IL 60660
(847) 687-5477
justinschwartzlaw@gmail.com

*Attorney for Plaintiff-Appellant*

# RELIEF REQUESTED

Plaintiff-Appellant, John Doe,[1] is a second-year law student at the

University of Illinois College of Law. The College of Law has unlawfully

demanded that Doe go speak to a unit at the school known as the Behavioral

Intervention Team ("BIT") and obtain what amounts to a forced unofficial mental

health evaluation against his will. BIT is a unit that supposedly deals with threats

of targeted violence. But the school concedes that Doe has made no threats to

anyone and that no such evidence exists in the record. Thus, Doe has not done

anything to justify having to meet with BIT. However, the school has informed

Doe that he will be expelled from the College of Law and University if he does

not comply, which would destroy his legal career. Doe obtained a job at a V100

firm during summer 2022 for the following summer, and his employment is in

danger.

Doe is in a difficult position: If he speaks to BIT, he will forfeit several

constitutional rights. Further, if he speaks to BIT, BIT must be satisfied with

[1] Plaintiff is filing this document as John Doe because he is appealing the district court's denial of his motion to proceed as John Doe. It was inappropriate to change the docket before Doe had the chance to appeal. This Court should change the docket to reflect John Doe until the Court decides the appeal one way or the other.

Doe's statements and speech; otherwise, it possesses the power to force Doe to

take other actions, such as therapy classes or additional quasi-forensic mental

health evaluations. *See* Student Code § 2-901, *available at*

https://studentcode.illinois.edu (last visited Dec. 14, 2022). If Doe refuses these

additional actions, the school can expel him anyway. *See id.* And if Doe does not

speak to BIT, the College of Law can expel him and destroy his legal career—

thereby causing Doe to lose hundreds of thousands (if not millions) of dollars in

lost future income.

But the school's demands are unconstitutional. Doe's First, Fifth, and

Fourteenth Amendment rights are being trampled by the College of Law. The

College of Law started the disciplinary process before Thanksgiving, *see* App.

Vol. III at 28–30;[2] Doe filed suit in the Central District of Illinois and moved

---

[2] Doe's appendix is separated into three volumes due to the vast number of messages and documents in the record. Each volume will be identified by App. Vol. I, Vol. II, or Vol. III. Volume I includes the docket and the district court's ruling. Volume II includes the relevant filings below, such as the Complaint and motions, and Volume III possesses the evidentiary matters, such as the messages and documents. Each volume is paginated starting from the number one. Doe is also appealing the district court's denial of his motion to proceed as John Doe, so he has redacted his name from each volume of the appendix. The district court abused its discretion when it denied the John Doe motion due to the extraordinary circumstances present in this case. *See, e.g.*, *Doe v. Village of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). There was no justification for the denial. Defendants face no prejudice, and the public faces no harm. Meanwhile,

immediately for a preliminary injunction and temporary restraining order. *See* App. Vol. II at 1–62. The district court denied Doe's motion, but it made several factual and legal errors in its ruling, and it did not address many of Doe's arguments. *See* App. Vol. I at 1–13.

Since the denial, the College of Law has informed Doe that they are moving forward with the disciplinary process. *See* App. Vol. III at 114. So given the short time frame, Doe respectfully asks for emergency consideration of this motion and an immediate injunction pending appeal or summary reversal of the district court's ruling. But either way, Doe is likely to succeed on the merits of his claims, and he should have received the injunction below. Because the district court denied the injunction, it would have been impractical to move again for an injunction pending appeal. *See* Fed. R. App. P. 8(a)(2).

Doe deserves the opportunity for a proper adjudication on the merits of his claims. Because the school is moving forward with the disciplinary process, there is not enough time to go through the normal appellate process absent an injunction or summary reversal. The school is likely to expel Doe while the appeal is pending. Additionally, the key points on appeal are the constitutional

---

Doe faces the potential of losing hundreds of thousands (if not millions) of dollars in lost future income.

harms that the College of Law has inflicted on Doe. The constitutional harms are enough to receive the injunction because they satisfy both the irreparable and imminent harm standards, and he is likely to prevail on the merits of his claims. The balance of harms factor also weighs in his favor. The district court did not address any of these points outside of compelled speech. *See* App. Vol. I at 1–13.

Specifically, Doe would like the Court to enjoin Defendants from: (1) enforcing any discipline on him for refusing to speak to BIT against his will during the pendency of this appeal; (2) sending his protected student speech to BIT during the pendency of this appeal; and (3) enforcing any discipline on him for not complying with an alleged "reasonable" directive by a University official under Student Code § 1-302(g) during the pendency of the appeal. The remaining parts of the injunction can be addressed on appeal.

Alternatively, the Court can summarily reverse the district court and remand with instructions to redo its analysis of the issues. Time is of the essence here.

## BACKGROUND

### I.      Factual History

Doe began his legal education at the University of Illinois College of Law in August 2021.[3] Doe informed the College of Law that he would consider filing lawsuits and capricious grading complaints as allowed under Student Code § 3-107, and he had two meetings with College of Law officials in February 2022 and March 2022. *See generally* App. Vol. II. Doe also had a meeting with Dean Virginia Vermillion at the College of Law, where she made bigoted remarks about his race, religion, national origin, and ethnicity. *See id.*

Afterwards and unbeknownst to Doe, Vermillion filed a defamatory report to BIT filled with falsehoods about Doe's mental state in March 2022. *See id.* Following that point, the College of Law communicated with BIT repeatedly about Doe but did not inform Doe. *See id.* From June to October 2022, BIT and the

---

[3] Doe is not going to provide an exhaustive account of the factual history here, as the in-depth history is documented in Doe's Complaint and the motion documents from both sides. *See generally* App. Vol. II. The main thrust is that the College of Law referred Doe to BIT and did not provide Doe or BIT any factual basis for the referral. *See id.* The school refused to provide facts to Doe and demanded that Doe speak to BIT without providing him details. *See id.* There is no evidence of any threatening or disruptive behavior on Doe's part. *See id.* BIT supposedly exists to prevent "targeted violence" against the University. *See* App. Vol. III at 84–92.

College of Law reached out to Doe repeatedly and demanded meetings without any factual basis to do so. *See id.* Doe refused to meet with BIT and said that he would consider taking legal action. *See id.* Doe did not see Vermillion's report until October 28, 2022, and he was not informed about the possibility of dismissal until October 25, 2022. *See id.*

On November 4, 2022, Doe met with Deans Amar and Winship via Zoom—both sides had counsel present. *See id.* In this meeting, Amar and Winship presented Doe and his counsel with information from Vermillion's report. *See id.* The pair read some of Doe's communications out loud and disagreed with some of his statements. *See id.* The pair demanded that Doe meet with BIT or face dismissal from the school. *See id.* The pair refused to consider any other options and repeated that dismissal was imminent. *See id.* Although the meeting was scheduled to seek a solution to the issue, the College of Law sought no solution—just strict compliance. *See id.*

Since that point, Dean Winship has continued to hound Doe with deadlines regarding the school's disciplinary process. *See, e.g.*, App. Vol. III at 28–30, 114. The College of Law has made it clear through these communications that they are moving forward with discipline. *See id.*

## II.   Procedural History

Doe filed his Complaint on November 18, 2022, and moved immediately for a preliminary injunction and temporary restraining order. *See* App. Vol. II at 1–62. Doe's Complaint included six counts and nine total claims: compelled speech, retaliation, chilling of free speech, void-for-vagueness, overbreadth, racial discrimination, sex discrimination, deprival of property without procedural due process, and deprival of liberty without due process.[4] *See id.* at 14–27. In his prayer for relief, he asked for permanent injunctions on compelled speech, retaliation, chilling of free speech, void-for-vagueness, overbreadth, deprival of property without due process, and deprival of liberty without due process. *See id.* at 28–30. In his preliminary injunction motion, he focused on compelled speech, retaliation, chilling, void-for-vagueness, and overbreadth. *See id.* at 32–34. However, the other claims are preserved due to the Complaint. *See id.* at 14-27.

The school responded to the motion on November 28, 2022, and ignored much of the actual substance of Doe's motion. *See id.* at 64–82. Instead, it made baseless assertions about Doe's mental health and accused him of being

---

[4] Doe is appealing his Amended Complaint, and he alerted the district court in his motion for reconsideration. *See* App. Vol. II at 112–14.

"paranoid" and "delusional" without any factual basis or context. *See id.* The school's response was a continuation of its refusal to provide any grounds or concrete examples to justify why it referred Doe to BIT. *See id.* When the school finally got around to the law, it focused on irreparable harm, and argued that the school's disciplinary process meant that there was no irreparable harm. *Id.* at 68–72. The school objected to Doe's compelled speech claim, but it barely addressed any of the other constitutional claims. *See id.* at 75–79.

Doe replied on December 1, 2022, and pointed out that he was *not* challenging the school's disciplinary process. *See id.* at 88–90. Rather, at the November 4th meeting, the school told Doe that it would move to expel him if he did not comply and meet with BIT. *See id.* However, Doe noted that constitutional harm satisfies the irreparable harm standard regardless of the disciplinary process. *See id.* at 90. Doe also addressed all the University's points and provided contrary information about the compelled speech claim. *See id.* at 85–108.

## III.    The District Court's Order

The district court issued an order denying Doe's motion in full on December 5, 2022. *See* App. Vol. I at 1–13. The district court adopted Defendants'

position that there was no irreparable harm. *See id.* However, the district court focused most of its analysis on the disciplinary process. *See id.* at 11–13. The district court also claimed that there was no compelled speech violation because the school supposedly was not asking Doe to "utter a single word." *Id.* at 11. That statement is clearly erroneous.

**ARGUMENT**

## I. Doe Satisfies the Irreparable and Imminent Harm Standards

Any constitutional violation is "proof of an irreparable harm." *Preston v. Thompson*, 589 F.2d 300, 303, n.3 (7th Cir. 1978). Further, First Amendment harms specifically count as irreparable harms. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Cassell v. Snyders*, 990 F.3d 539, 546 (7th Cir. 2021) (same).

Here, each of Doe's claims have a constitutional backing. *See* App. Vol. II at 14–27. Any one of Doe's claims on the First Amendment or due process would suffice to satisfy the irreparable harm standard. *See Preston*, 589 F.2d at 303, n.3. Doe's claims about void-for-vagueness and overbreadth have a First Amendment backbone, so they would count as well. *See* App. Vol. II. at 14–27.

None of these claims have anything to do with the school's disciplinary process. *See id.* But the district court refused to address any of these claims outside of compelled speech. *See* App. Vol. I at 1–13. Thus, the school's disciplinary process should be enjoined as applied to Doe because of the constitutional harm— regardless of whatever process it provides Doe. *See Elrod*, 427 U.S. at 373; *Cassell*, 990 F.3d at 546; *Preston*, 589 F.2d at 303 n.3.

The harm is also imminent because the school is demanding that Doe speak to BIT against his will (compelled speech); they are sending his protected First Amendment speech to BIT (retaliation); Doe fears being reported to BIT if he speaks at all (chilling); they are using the Student Code to demand the meeting with BIT and to threaten discipline if Doe does not comply (void-for-vagueness and overbreadth); the Student Code does not require Doe to speak to BIT, and the school did not provide notice or a hearing *before* demanding the meeting (property due process deprival); and the school made baseless allegations about Doe's mental health which can impact his employment, and they did not provide notice or a hearing *before* sending the information to BIT (liberty due process deprival). All of these things are happening *now*. But again, the district court refused to address any of those points outside of compelled

speech. *See* App. Vol. I at 1–13. When Doe moved for reconsideration, the district court provided a one sentence explanation that it believed Doe's "object" only related to compelled speech. *See* Docket Entry 1-1 at 21. That is simply not the case. Also, traditional legal remedies would be inadequate because no money could repair the loss of Doe's legal career.

## II. Doe is Likely to Prevail on the Merits of His First Amendment Claims

### A. Compelled Speech

 "In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969). "[Students] cannot be punished merely for expressing their personal views on the school premises . . . unless school authorities have reason to believe that such expression will 'substantially' interfere with the work of the school or impinge upon the rights of other students." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (quoting *Tinker*, 393 U.S. at 509).

"When speech is compelled . . . damage is done." *Janus v. AFSCME*, 138 S. Ct. 2448, 2464 (2018). "Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason, one of our

landmark free speech cases said that a law commanding 'involuntary affirmation' of objected-to beliefs would require 'even more immediate and urgent grounds' than a law demanding silence." *Id.*

The facts of this case are controlled by *Miller v. Skumanick*, where a group of teens were caught "sexting." 605 F. Supp. 2d 634, 640, 644 (M.D. Pa. 2009), *aff'd sub nom. Miller v. Mitchell*, 598 F.3d 139, 150 (3d Cir. 2010). In *Miller* a prosecutor threatened criminal prosecution if the teens did not attend a program to address why their actions were wrong. *Miller*, 605 F. Supp. 2d at 640, 644.

Here, the district court distinguished *Miller* based on the idea that the University was supposedly not requiring Doe to "utter a single word." App. Vol. I at 11. That statement is clearly erroneous as a factual matter.[5] Dean Amar suggested otherwise at the November 4th meeting. There is clear evidence in the record from Defendants Justin Brown and Katherine Snyder that BIT wanted to speak to Doe about the report and messages that the College of Law sent to BIT. *See, e.g.*, App. Vol. III at 1–2, 10–16. Moreover, the district court's factual finding defies common sense. If BIT's goal is to prevent "targeted violence," how could they accomplish that goal if the student could remain silent? BIT obviously

---

[5] On appeal, this Court will review factual matters for clear error and legal issues de novo. *See, e.g.*, *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020).

would expect Doe to speak and respond. *See, e.g., id.* Thus, this case is just like

*Miller*, where the students would have been required to explain and justify

themselves. *See Miller*, 605 F. Supp. 2d at 640, 644.

The district court also claimed that the parties agreed that the University's

"codes of conduct" require Doe "to comply with BIT's 'reasonable' requests."

App. Vol. I at 10. That is also clearly erroneous as a factual matter. Doe

repeatedly argued that the University's Student Code barely mentions BIT. *See*

*generally* App. Vol. II; Student Code. Rather, the school is using the vague and

overbroad provision of § 1-302(g) to demand that Doe speak with BIT. *See*

Student Code § 1-302(g). But that provision does not mention BIT at all. *See id.*

There is no provision in the Student Code that specifically requires a student to

meet with BIT.

The district court also incorrectly suggested that compelled speech can

only occur when the University compels "individuals 'to voice ideas with which

they disagree.'" App. Vol. I at 10 (quoting *Janus*, 138 S. Ct. at 2464). The Supreme

Court has never limited compelled speech to that context, and other circuits have

noted that compelled speech can occur even in the absence of a specific message.

*See Miller*, 598 F.3d at 152 n.14 ("compelled speech is not limited to . . . requiring

a speaker to express a certain viewpoint or message"). Meeting with BIT *would* require Doe to agree with the school's message that he did something requiring explanation. But it is not a requirement for compelled speech. And affirming the district court's rationale would create a conflict among the circuits. *See id.*

Therefore, the district court's ruling cannot be sustained on the compelled speech point either factually or legally. The parties deserve an opportunity to fully brief this issue and have oral argument to allow the Court to properly address these issues. The school should be enjoined from moving forward with discipline until that happens.

## B.    Retaliation

Doe is also likely to prevail on his First Amendment retaliation claim. Every communication between Plaintiff and a member of the University's faculty or staff, including at the College of Law or BIT, is protected First Amendment communication. Defendants conceded that they reported Plaintiff's protected speech to BIT, which constitutes retaliation under the First Amendment. *See generally* App. Vol. II.

A prima facie case of retaliation means that Doe (1) "engaged in activity protected by the First Amendment;" (2) "suffered a deprivation that would likely

deter First Amendment activity in the future; and (3) [that] the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotations and citations omitted).

All three elements are present here. Doe's capricious complaint to Amar—a complaint allowed by Student Code § 3-107—was protected First Amendment speech. Doe suffered a deprivation because Defendants reported the protected speech to BIT. *See generally* App. Vol. II. Further, Doe's comments to Amar and Vermillion at the March 2022 meeting were protected speech. Defendants sent it to BIT within *days* which satisfies the temporal (motivating factor) element, and Doe is much less likely to engage in First Amendment speech because of BIT's involvement. *See id.; Douglas*, 964 F.3d at 646.

The underlying report and referral to BIT is based on Doe's protected speech. This is retaliation, and Doe should get an injunction. But the district court did not address this point. If the process involving Doe violates the First Amendment as it stands, then the school is violating the First Amendment, and they lack the authority to force a meeting with BIT. Doe specifically asked for the district court to enjoin Defendants from sending his protected speech to BIT in

his motion for a preliminary injunction and temporary restraining order. *See* App. Vol. II at 32. Thus, the district court plainly erred by not addressing this issue in its opinion. *See* App. Vol. I at 1–13. The one sentence rejection in its denial of Doe's motion for reconsideration is also insufficient. *See* Docket Entry 1–1 at 21. Doe deserves an opportunity to brief this issue or have this issue properly adjudicated before the school moves forward with discipline.

### C.     Chilling of Doe's Free Speech

Likewise, Doe is likely to prevail on his chilling argument. The BIT process chills his speech because Doe now fears being reported to BIT if he speaks at all due to BIT's broad standards. *See infra* at 20. And because the University of Illinois is a public school, this clearly violates the First Amendment. The University cannot chill speech that it disagrees with based on undifferentiated and irrational fears. *See Tinker*, 393 U.S. at 508.

The *Tinker* substantial disruption standard is the default rule in the Seventh Circuit. *See N.J. by Jacob v. Sonnabend*, 37 F.4th 412, 424 (7th Cir. 2022). Further, "[t]he application of *Tinker* must account for such factors as the age and grade level of the students to whom the speech is directed . . . ." *Id.* at 426. "[T]he

inquiry [also] accounts for the professional knowledge and experience [of administrators] in setting and enforcing disciplinary standards." *Id.*

Here, the College of Law's entire basis for forcing Doe to speak to BIT is its irrational fears about Doe based on unfounded and nonsensical beliefs about his mental health. *See generally* App. Vol. II; App. Vol. III. The school has conceded that there is no threat, and they have not argued that there was any disruption. *See generally* App. Vol. II. Moreover, Doe is an adult, as are the rest of the students and faculty at the College of Law, and the faculty is comprised of former lawyers and law clerks who should understand how the First Amendment works. So naturally, the College of Law has an extremely short leash when it comes to regulating speech on campus. *See Sonnabend*, 37 F.4th at 426; *see also McCauley v. Univ. of V.I.*, 618 F.3d 232, 242 (3d Cir. 2010) ("there is a difference between the extent that a school may regulate student speech in a public university setting as opposed to that of a public elementary or high school").

Indeed, the *McCauley* court noted the differences between public colleges and K-12 schools in-depth before striking down the college's provision there under the overbreadth doctrine. *See McCauley*, 618 F.3d at 242–52. Thus, Doe's

speech is harmless or protected, and the University of Illinois fails under *Tinker*.
*See Sonnabend*, 37 F.4th at 424 ("[t]he default rule is . . . *Tinker*").

Again, Doe should have received an injunction. If the BIT process as applied to Doe is violating the First Amendment, the school lacks the authority to force a meeting with BIT. The attempted forced meeting with BIT is not just about compelled speech. The basis for requiring the meeting *is* Doe's speech. *See generally* App. Vol. II; App. Vol. III. But the district court refused to address the point. *See* Docket Entry 1–1 at 21. Doe deserves a proper adjudication on this issue, and the school should be enjoined from pursuing discipline until he receives such an adjudication.

### D.    Void-For-Vagueness and Overbreadth

Doe is also likely to prevail on his void-for-vagueness and overbreadth claims, and each one implicates the First Amendment. An enactment is void-for-vagueness if it is not clearly defined. *See, e.g., Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). If an enactment reaches protected First Amendment conduct, "the [void-for-vagueness] doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1984). At universities, a student code provision "must give adequate warning of the conduct which is to

be prohibited and must set out explicit standards" for its application. *UWM Post,*

*Inc. v. Bd. of Regents of Univ. of Wis. Sys.*, 774 F. Supp. 1163, 1178 (E.D. Wis. 1991).

Here, the provision of the University's Code threatens discipline if a

student "fail[s] to comply with reasonable directions of a member or agent of the

university acting in the performance of their duty." Student Code § 1-302(g). The

University provides no definition or guidance on how it will use the provision.

But the College of Law uses the provision here and threatens expulsion if Doe

does not comply with BIT. That is unacceptable. *See UWM Post*, 774 F. Supp. at

1178 (a student code provision "must give adequate warning of the conduct

which is to be prohibited and must set out explicit standards for those who apply

it"). The Student Code barely mentions BIT, and BIT is not mentioned in § 1-

302(g). Thus, Student Code § 1-302(g) fails under the void-for-vagueness

doctrine.

Similarly, overbroad laws deter "people from engaging in constitutionally

protected speech, inhibiting the free exchange of ideas." *United States v. Williams*,

553 U.S. 285, 292 (2008). Thus, a provision "is facially invalid if it prohibits a

substantial amount of protected speech." *Id.*; *see also McCauley*, 618 F.3d at 241 (a

college provision "may be struck down on its face . . . if it reaches too much

expression that is protected by the Constitution"). Overbreadth analysis has two steps: First, the court "construes" the challenged provision. *Williams*, 553 U.S. at 293. Second, the court evaluates whether the provision, as constructed, punishes "a substantial amount of protected expressive activity." *Id.* at 297.

Here, the provision fails under both steps. The provision states that a student must comply with any "reasonable" directive by a "member or agent" of the University—which applies to many people. Student Code § 1-302(g). The term "reasonable" is undefined. The College of Law's construction suggests that it could apply to just about all speech, and nothing suggests that there are any limiting principles; BIT is not mentioned anywhere. Thus, § 1-302(g) fails under the first step. *See Williams*, 553 U.S. at 292–93.

The BIT process also implicates a "substantial amount of protected expressive activity[,]" so it fails under the second step. *Id.* at 297. BIT asks people to report anyone who has suffered "humiliation" or a "termination" from a job or "failed civil actions[,]"or anyone who appears "self-centered[]." App. Vol. III at 88. They also want reports on anyone who has an "[i]ncreasingly strident opinion." *Id.* at 90. Thus, Student Code § 1-302(g) is overbroad, and the Court should strike it down. *See McCauley*, 618 F.3d at 242–52.

Doe argued for both void-for-vagueness and overbreadth in his motion. *See* App. Vol. II at 58–62. Defendants failed to respond and essentially waived any counterarguments. *See id.* at 64–82. Doe should have received an injunction. If the provision fails, the school does not have the authority to force a meeting with BIT. Therefore, the district court's failure to address these arguments is plain error.

### III.    Doe is Likely to Prevail on His Due Process Claims

Doe also has both property and liberty due process claims, and he asked for injunctions in his Complaint. *See id.* at 14–27. Thus, the arguments are preserved on appeal. *See id.*

The relationship between Doe and the University of Illinois is a matter of contract. *See Doe v. Purdue Univ.*, 928 F.3d 652, 661 (7th Cir. 2019). Doe and the University have a contract here, but the Student Code does not require Doe to speak to BIT. Moreover, the school did not provide Doe notice or a hearing *before* requiring the meeting with BIT. Thus, the meeting with BIT is invalid, and the school should be enjoined.

Similarly, this Court applies the stigma-plus test for claims of a deprival of liberty without due process. *See id.* at 661–64. Here, Vermillion's report contains

numerous falsehoods, and Doe did not receive any notice or a hearing *before* the school referred him to BIT. The fact that this can impact his employment triggers the stigma-plus test.[6] *See id.* Doe is likely to prevail, and the school should be enjoined. Doe deserves a proper adjudication on his due process claims before the school can move forward with discipline.

## IV.    Summary Reversal

### A.    The District Court's Ruling is Clearly Erroneous

As mentioned above, the district court committed both factual and legal errors in its ruling. *See* App. Vol. I at 1–13. Thus, the Court could also summarily reverse the district court.

"Summary disposition is appropriate in an emergency, when time is of the essence and the court cannot wait for full briefing and must decide a matter on motion papers alone." *United States v. Fortner*, 455 F.3d 752, 754 (7th Cir. 2006). Further, courts can summarily dispose of appeals *sua sponte* without briefing if the issues are clear. *See Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994)

---

[6] The stigma-plus test is government action that defames a person (stigma) in a way that impacts their employment or changes their legal status (plus). *See Paul v. Davis*, 424 U.S. 693, 706–707 (1976).

(collecting cases); *see also Sills v. Bureau of Prisons*, 761 F.2d 792, 794 (D.C. Cir. 1985) (granting summary reversal).

Here, time is of the essence, and the district court only addressed compelled speech and the school's disciplinary process. *See* App. Vol. I at 9–13. But the compelled speech ruling is erroneous, and Doe is not challenging the disciplinary process. The whole disciplinary process discussion is a diversion because Doe is challenging the *constitutional harms*.

The court also provided almost no justification for its John Doe denial, which itself is an abuse of discretion. *See Doe v. Village of Deerfield*, 819 F.3d at 377. The court claimed that Doe waived the issue but ignored the fact that Doe filed an Amended Complaint with redactions and asked the court to seal the previous filings. *See* App. Vol. II at 107–08. The court provided a one sentence justification in the hearing and motion for reconsideration. *See* Docket Entry 1–1 at 21. Thus, although Doe would prefer an injunction pending appeal, the Court could also summarily reverse the district court without briefing and remand with instructions to properly address the constitutional issues and John Doe motion.

## CONCLUSION

Doe deserves a fair adjudication of his claims before the school can move forward with its disciplinary process. In the absence of this Court's intervention, Doe will have no choice but to engage the school and continue to face unconstitutional demands and actions by the University. The Court should grant an injunction as applied to Doe pending appeal. Alternatively, the Court should summarily reverse the district court.

Respectfully submitted,

Dated: December 14, 2022

/s/Justin Schwartz
Justin Schwartz
ARDC No. 627328
1723 Devon Ave. # 607882
Chicago, IL 60660
(847) 687-5477
justinschwartzlaw@gmail.com

**CERTIFICATE OF COMPLIANCE**

I certify that this motion complies with the word limit of Federal Rule of Appellate Procedure 27 because this motion contains less than 5,200 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).

The motion also complies with the typeface requirements of Federal Rules of Appellate Procedure 27, and the style requirements of Federal Rule of Appellate Procedure 32.

/s/Justin Schwartz

## CERTIFICATE OF SERVICE

I certify that I filed the above document via the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system once they appear.

I have also electronically notified Defendants' attorney who has not yet appeared on the docket of this case at the following address: michael.hayes@huschblackwell.com.

/s/Justin Schwartz