**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**AT SPRINGFIELD**

| | | |
|---|---|---|
| KEERUT SINGH | ) | |
| | ) | |
| Plaintiff, | ) | 2:22-cv-02252-SEM-EIL |
| | ) | |
| v. | ) | |
| | ) | |
| VIKRAM D. AMAR, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION TO RECONSIDER ORDER, REVISE CASE CAPTION, AND UNSEAL
DOCKET NUMBER 9-1**

Plaintiff, a law student and future legal professional, continues to be baffled by this Court

and case. To review: Plaintiff brought a lawsuit with six counts and nine total claims: compelled

speech, retaliation, chilling, void for vagueness, overbreadth, racial discrimination, sex

discrimination, property due process, and liberty due process. This lawsuit was a very serious

matter, as the University of Illinois College of Law threatened to throw Plaintiff out of the

school, which would have essentially destroyed his legal career.

Plaintiff filed a written motion to proceed as John Doe and seal the entire record. *See*

Docket No. 1-2. Plaintiff also moved immediately for a temporary restraining order and

preliminary injunction. *See* Docket Nos. 2, 2-1. The Court denied Plaintiff's temporary

restraining order on November 4, 2022, *see* Docket No. 4 (text order), but the Court did not

address the constitutional claims. The Court then held a hearing on December 1, 2022, which

lasted approximately ten minutes. *See generally* Minute Entry from December 1, 2022. In this

hearing, the Court summarily denied Plaintiff's motion to proceed as John Doe from the bench

with minimal explanation. Plaintiff's counsel tried to make arguments on the John Doe motion,

but the Court refused to hear them. The Court then proceeded to ask a total of one question at the hearing. The Court asked zero questions to Plaintiff's counsel. (The one question to Defense counsel was about academic deference, which was not relevant to this dispute.)

The hearing was clearly prologue because the Court denied Plaintiff's motion for a preliminary injunction a few days later. *See* Docket No. 11. Once again, the Court refused to address the constitutional claims—though the Court did assert its belief that "nothing indicat[ed] that the University intend[ed] to force [Plaintiff] to engage in the kind of speech protected by the First Amendment." *Id.* at 10. The ruling also contained several factual errors and key omissions, such as the fact that the school withheld the initial report from Plaintiff for months. The initial report was filed in March 2022, and Plaintiff did not see it until October 2022—despite receiving several messages during those months demanding meetings. This information needed to be in the ruling since the Court claimed that it was construing the Complaint in Plaintiff's favor (obviously it was not). *See generally id.* at 1–13.

Plaintiff immediately appealed to the Seventh Circuit, where he filed an emergency motion for an injunction pending appeal or summary reversal. *See* Docket Nos. 21, 21-1. In this motion, Plaintiff argued that the Seventh Circuit should summarily reverse this Court's clearly erroneous findings and holdings. *See* Docket No. 21-1. The Seventh Circuit declined to expedite the matter but referred the case to mediation. The parties then settled the dispute.

As a part of the settlement, the parties agreed to jointly move to have this Court seal the case and anonymize Plaintiff's name for largely the same reasons that Plaintiff expressed in his initial motion. *Compare* Docket No. 32 *with* Docket No. 1-2.[1] The Court granted the motion,

---

[1] Plaintiff did not make a long legal argument or cite cases in his initial motion for John Doe and to seal. *See* Docket No. 1-2. But that is because Plaintiff and his counsel both believed that exceptional circumstances existed on the face of the Complaint and initiating documents. *See* Docket Nos. 1 and 2. Plaintiff was not expecting a legal fight on this matter. But if that was not enough, Defendants'

sealed the record, and changed Plaintiff's name to "John Doe." Plaintiff then dismissed the

matter, Docket No. 33, and Volokh moved to intervene after the case had been dismissed.

Docket No. 34. Plaintiff opposed Volokh's motion completely on procedural grounds. *See*

Docket No. 37. In his opposition, Plaintiff *specifically* asked the Court to allow Plaintiff a

hearing or the opportunity to present arguments on the merits if the Court was going to allow

intervention:

> At the very least, if this Court is in any way inclined to grant some aspect of
> Volokh's motion to unseal (which it shouldn't), Plaintiff respectfully requests an
> opportunity for briefing and/or a hearing to address the propriety of unsealing
> specific documents and the application of redactions to preserve Plaintiff's
> pseudonym status.
>
> *Id.* at 14.

But much like the rest of this case, the Court ignored Plaintiff and granted almost full

relief to the other side.[2] The Court then issued a written ruling on July 17, 2023, where it

demanded that the parties redact the names, addresses, phone numbers, and identifying

information of third parties. *See* July 17, 2023, Order (hereinafter "Order") at 16. Defendants

complied and redacted certain documents. For the reasons that follow, Plaintiff declines to do so

for the remaining documents.

---

response brief (Docket No. 7) clearly provided such circumstances. Even Volokh acknowledged that
Plaintiff should have probably received "John Doe" status from the beginning. *See* Volokh's Mot. at
10–14. But the Court did not even consider the issue. Nor did the Court ask for supplemental briefing
with legal arguments. Instead, it summarily dismissed the issue and placed Plaintiff's name on the
docket *without giving him the chance to dismiss the case*. The Court then proceeded to splatter
Plaintiff's name all over its ruling denying Plaintiff's preliminary injunction. *See generally* Docket No.
11. That is not Justin Schwartz's fault. If the "cat is out of the bag on Plaintiff's identity," Docket No.
39 at 11, the Court's actions early in the case guaranteed that result.

[2] If Plaintiff did not know better, he would think that these proceedings were *ex parte*. The only
difference, of course, being that Plaintiff spent thousands of dollars and filed documents with counsel.
But the Court ignored essentially everything Plaintiff said in almost every document he filed, so all
that mattered was what Defendants and Volokh said (even if they were wrong on the law).

## ARGUMENT

**I.**  **The Court Cannot Order Plaintiff to Redact the Information of Third Parties in this Case**

This Court entered its Order on July 17, 2023, reversing its previous ruling sealing the record and giving pseudonymity to Plaintiff. In this Order, the Court commanded both parties to "redact Plaintiff's personally identifiable information, see Fed. R. Civ. P. 5.2(a), and the names, telephone numbers, and other identifiable information of all non-parties." Order at 16. The Court cited no authorities to establish its ability to require the redactions of non-parties, and the Order is completely inconsistent with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 5.2.

Rule 5.2(a) only requires the redactions of certain information. The Court may only require other redactions with a showing of "good cause" via a protective order. Fed. R. Civ. P. 5.2(e). No third party has asked for a protective order here, and the Court provided no basis for such a requirement in its Order. Moreover, the choice to eliminate Plaintiff's pseudonymity, but seal certain documents and require the refiling of redacted versions of those same documents, is inconsistent with the First Amendment right of access that the Court purportedly granted in its Order. The Order does not help Plaintiff, and it is also not what Plaintiff requested in his motion.

But regardless, Plaintiff already filed redacted versions of Docket Nos. 1-3, 1-6, 1-7, and 5-1 with his Amended Complaint. *See* Docket Nos. 10-4, 10-5, 10-6, and 10-7. Counsel erred by including 1-6 and 9-1 in the motion for relief. 9-1 contains no information about Plaintiff; rather, it is a string of text messages that contains phone numbers and addresses of third parties. Notwithstanding the lack of a basis to redact that information, none of the information is even private. *Cf. Smith v. Maryland*, 442 U.S. 735 (1979) (refusing to protect phone numbers under the Fourth Amendment, in part, because the phone companies already have the information). The same is true here. Random names, phone numbers, and addresses are not private information.

Likewise, 1-6 contains names of people on the *University of Illinois Law Review*, which is relevant to the Title IX sex discrimination claim. And because the information is not Plaintiff's, he is not going to spend money or time to redact it. Thus, Docket No. 9-1 should be unsealed and placed back on the docket immediately; Plaintiff will not redact it or refile any other documents.

Additionally, the Court has absolutely no authority to choose Plaintiff's name and place it on the docket against his wishes. Rule 10 provides that pleadings "must name all the parties." Fed. R. Civ. P. 10(a). But the decision of *which* name to choose is made by the parties—not the Court. When the Court denies pseudonymity, it is supposed to give the plaintiff a chance to discontinue or refile with a name on the docket. *See, e.g.*, *F.B. v. E. Stroudsburg Univ.*, No. 3:09cv525, 2009 WL 2003363, at *1–4 (M.D. Pa. July 7, 2009) (appropriately issuing a detailed opinion denying pseudonymity and requiring an amended complaint with proper names). The Court's decision to choose Plaintiff's name in November and place it into the public sphere against his will was (and remains) an *ultra vires* act. Thus, the case caption should be revised to appropriately reflect Plaintiff's name as noted in his prior motion for reconsideration. *See* Docket No. 13. Plaintiff does not consent to the current name on the docket, and he will not acknowledge it.

## II.    Volokh's Motion

Plaintiff filed a notice dismissing this action under Rule 41. *See* Docket No. 33. Per the Rule, the case is automatically dismissed *upon filing* when there is a notice of dismissal before an answer or summary judgment motion. *See* Fed. R. Civ. P. 41(a)(1)(A)(i). That means the case was dismissed *before* Volokh moved to intervene; Plaintiff did not need the Court's approval.

Per binding Seventh Circuit precedent, Volokh needed Article III standing to challenge the protective order.[3] *See Bond v. Utreras*, 585 F.3d 1061, 1072 (7th Cir. 2009).

But much like the Court's previous actions, the Court did not analyze what Plaintiff briefed. Instead, the Court asserted, without analysis, that Volokh had "'standing to challenge' the sealing order entered here 'for abuse or impropriety.'" Order at 8 (quoting *Grove Fresh Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 895, 897 (7th Cir. 1994)). But as the Seventh Circuit noted in *Bond*:

> *Jessup* and *Associated Press* do not address standing at all. *Grove Fresh* refers only summarily to the question of the intervenors' standing. At one point, addressing the collateral litigants' request for access to discovery, the opinion collapses the jurisdictional question into a question of the procedural propriety of intervention. *Grove Fresh*, 24 F.3d at 896 ("It is apparent . . . that intervention is the procedurally appropriate course for third-party challenges to protective orders . . . . Hence, [the defendants'] jurisdictional challenges are unavailing."). But the procedural propriety of using Rule 24(b) does not answer the separate question of whether the requirements of Article III must be or have been satisfied. At another point *Grove Fresh* broadly states without analysis that "the press Plaintiffs have standing to challenge a protective order for abuse or impropriety." *Id.* at 898. Following this statement are citations to a case from this circuit regarding access to sealed documents in court files, *In re Continental Illinois Securities Litigation*, 732 F.2d 1302 (7th Cir. 1984), and an Eleventh Circuit case regarding intervention for purposes of challenging a protective order in an ongoing suit, *In re Alexander Grant Co. Litigation*, 820 F.2d 352 (11th Cir. 1987). Here, the documents Kalven seeks are not in the court file, and the lawsuit had been settled and dismissed at the time the district court permitted him to intervene.

> *Bond*, 585 F.3d at 1069 n.5.

While it is true that Volokh sought documents in the court file, the documents he wanted were *already publicly available*. The question then was not whether someone would have standing to challenge an order sealing records from the public when they are not otherwise available; rather, the question was whether the existence of publicly available records means that

---

[3] With no sense of irony, Volokh moved to intervene to press *his* First Amendment rights *after* applauding the Court's denial of Plaintiff's First Amendment rights in his posts.

there is not an injury-in-fact, and therefore, no standing. The Court needed to perform an injury-in-fact analysis. But the Court instead asserted "without analysis" that Volokh had standing. *See id.*

From a practical standpoint, the Court may have wondered why it mattered if the case remained sealed, given that the records were already publicly available. But keeping the case sealed with John Doe would mean that the case would not show up on employment background checks. Employers check official databases. While the public would be free to run internet searches on Plaintiff and find the records elsewhere, most employers would be unlikely to do that without first having a reason. Even keeping the "John Doe" designation would help by not attaching Plaintiff's name to the litigation. But the Court's ruling now places the information back on the official electronic databases to be found by others. And placing Plaintiff's name back on the case eliminates any remaining anonymity.

For these same reasons, it is unclear why the Court did not unseal more. If Volokh indeed has a First Amendment right here, it is unclear why that would also not apply to the other records. Everyone will know that Plaintiff is the subject of the documents in question. Moreover, many of these records are already publicly available. The Court's ruling does not help Plaintiff, and Plaintiff is not going to pay an attorney or spend time redacting the information of third parties. No one has asked the Court for that relief, and the demand fails to satisfy strict scrutiny as required by the First Amendment. Thus, Docket No. 9-1 should be unsealed and placed back on the docket; Plaintiff will not redact it or refile any other documents.

The Court placed Plaintiff's name back on the docket without giving him an opportunity to appeal. So Plaintiff will not appeal and further place his name into the public sphere (unless the Court does not unseal 9-1). Likewise, moving for sanctions against Volokh under Rule 11

would be futile in this Court, as Plaintiff is not going to receive an appropriate adjudication of anything in this Court. Instead, Plaintiff will note that he hopes Volokh will consider pausing before posting about allegations next time. Allegations do not constitute facts, and reporting about them before verifying the facts can be quite damaging to the target of the allegations. The whole ordeal with the accusations against Judge (now Justice) Kavanaugh from a few years ago proves that point. And given that Plaintiff is a private person, the press does not have unlimited authority here. As one California appellate court put it:

> [A] statement of opinion may be actionable . . . if it implies the allegation of undisclosed defamatory facts as the basis for the opinion . . . . Thus, there is no wholesale defamation exemption for anything that might be labeled an opinion. If a statement of opinion implies a knowledge of *facts* which may lead to a defamatory conclusion, the implied facts must themselves be true. Even if the publisher of the opinion states the facts upon which he or she bases this opinion, if those facts are either incorrect or incomplete, or if the person's assessment of them is erroneous, the statement of opinion may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications, and such statements may be actionable. In such a case, the dispositive question is whether a reasonable factfinder could conclude the published statements *imply* an assertion of defamatory *fact*. If so, the defendant must prove the fact is true.

*Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1181 (2000) (cleaned up) (internal quotations and citations omitted).

Indeed, the facts are in dispute in this case, so the press must note that in the publication if it seeks to write about the case. Otherwise, the person responsible for the publication (regardless of who it is) may be liable. Here, Plaintiff vigorously denies all the school's assertions.[4] In fact, the supposed "allegations" and assertions by the school and Defense counsel are nothing more than unacceptable and gross attacks on Plaintiff's character. Had this case

---

[4] Plaintiff has "release[d] and discharge[d]" the relevant parties in this case as a part of the settlement. But the settlement does not contain any express confidentiality or non-disclosure agreement. Thus, Plaintiff is free to talk about the case to third parties. Plaintiff will have to explain this matter to the state bar association as a part of his character and fitness review anyway, so it should come as no surprise to anyone that Plaintiff disputes the information in the public record.

continued, Plaintiff not only would have filed motions to strike and for sanctions, but Plaintiff likely would have sued all the school's attorneys and Husch Blackwell for defamation under Illinois law for millions of dollars. Plaintiff had a clear factual basis to say the things he said. The case never proceeded to discovery, so it is not fair to draw any conclusions about Plaintiff from the record. Volokh should be ashamed for posting about these allegations. These are all reasons why certain records should never have seen the light of day.[5]

The school and its attorneys may be released from their conduct under the settlement, but that does not apply to third parties. Plaintiff retains the right to bring defamation actions against any third parties who post nonsense about this case. Fortunately, any future actions will not take place in the Central District of Illinois. Plaintiff is a private person who does not deserve to have his life or career ruined by falsehoods and fantasies. *See Gertz v. Welch*, 418 U.S. 323, 347–48 (1974). Plaintiff will not be defined by the school's fraudulent attacks and assertions.

## CONCLUSION

This Court was right about one thing: the public has an interest in federal lawsuits. But the public has an interest "not because the controversies of one citizen with another are of public concern," but because federal lawsuits are "**the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is**

---

[5] Defense counsel also could have been sanctioned for filing the school's report without redacting Plaintiff's information as required under Rule 5.2(a). Plaintiff did not file the report with the Court; it was Defendants who included a version of the report with their response that conveniently redacted other people's information but left all of Plaintiff's information, including his full birth date in numerous places. *See, e.g.*, Docket No. 7-1 at 15, 31, 39. That clearly violates Rule 5.2(a), so there is no excuse for this failure. Michael Hayes is a partner at a big law firm. The blasé handling of Plaintiff's sensitive records shows how little the University cares about the Family Educational Rights and Privacy Act (FERPA). Plaintiff may have also had a substantive due process claim based on the school's handling of Plaintiff's personal information. *See Whalen v. Roe*, 429 U.S. 589, 599–600 (1977).

**performed**." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (Posner, J., in chambers) (emphasis added) (citation omitted).

The University of Illinois publicly attacked one of its students in a court filing without any clear facts or context for the items in the record. *See generally* Docket No. 7 and accompanying exhibits. This Court proceeded to summarily dismiss everything Plaintiff filed and then spent more time analyzing Volokh's motion to intervene than it spent on the entirety of the merits of Plaintiff's claims. That alone says everything the public needs to know about this case. At a time when the public is losing faith in its institutions, it is critical that government actors do not exacerbate the problem. This Court's rulings do not help. Volokh claims that this Court's ruling on the preliminary injunction may be "persuasive precedent" for other courts. Plaintiff strongly disagrees. Plaintiff's emergency motion at the Seventh Circuit (which he drafted himself) establishes why. The emergency motion is attached as an appendix to the end of this document.

Plaintiff has suffered financial damages because of this lawsuit, and the damages cannot be fairly attributed to only Plaintiff or his first attorney (Justin Schwartz). Ultimately, this Court decides how to hand down its rulings. Plaintiff brought this case as a "John Doe" lawsuit to try and keep anonymity. But as mentioned above, the Court was uninterested from the get-go. That has nothing to do with Plaintiff or his counsel. Plaintiff spent thousands of dollars on a federal lawsuit. His name has been destroyed publicly, and he did not even receive an adjudication on the merits of his claims. Plaintiff may be a cocky law student, but no one deserves to be treated like that.

The Court should revise the case caption and unseal Docket No. 9-1. Docket Nos. 1-3, 1-6, 1-7, and 5-1 already exist on the docket in a redacted form, so Plaintiff will not redact or refile any other documents.

/s/ ⟋⟋⟋⟋⟋⟋⟋⟋⟋

## CERTIFICATE OF COMPLIANCE

This motion complies with Local R. 7.1, in that it contains less than 7,000 words. The motion was filed in compliance with Local R. 5.4(B)(1)(b).

/s/ ⟨signature⟩

## CERTIFICATE OF SERVICE

All relevant parties have been served.

/s/ _____

No. 22-3211

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

JOHN DOE,

Plaintiff-Appellant,

v.

VIKRAM D. AMAR, et al.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Central District of Illinois
Case No. 2:22-cv-02252
Hon. Sue E. Myerscough

---

## PLAINTIFF-APPELLANT'S (SECOND) EMERGENCY MOTION
## FOR AN INJUNCTION PENDING APPEAL
## OR SUMMARY REVERSAL

---

Justin Schwartz
ARDC No. 627328
1723 Devon Ave. # 607882
Chicago, IL 60660
(847) 687-5477
justinschwartzlaw@gmail.com

*Attorney for Plaintiff-Appellant*

## RELIEF REQUESTED

Plaintiff-Appellant, John Doe,[1] is a second-year law student at the University of Illinois College of Law. The College of Law has unlawfully demanded that Doe go speak to a unit at the school known as the Behavioral Intervention Team ("BIT") and obtain what amounts to a forced unofficial mental health evaluation against his will. BIT is a unit that supposedly deals with threats of targeted violence. But the school concedes that Doe has made no threats to anyone and that no such evidence exists in the record. Thus, Doe has not done anything to justify having to meet with BIT. However, the school has informed Doe that he will be expelled from the College of Law and University if he does not comply, which would destroy his legal career. Doe obtained a job at a V100 firm during summer 2022 for the following summer, and his employment is in danger.

Doe is in a difficult position: If he speaks to BIT, he will forfeit several constitutional rights. Further, if he speaks to BIT, BIT must be satisfied with

_____

[1] Plaintiff is filing this document as John Doe because he is appealing the district court's denial of his motion to proceed as John Doe. It was inappropriate to change the docket before Doe had the chance to appeal. This Court should change the docket to reflect John Doe until the Court decides the appeal one way or the other.

Doe's statements and speech; otherwise, it possesses the power to force Doe to

take other actions, such as therapy classes or additional quasi-forensic mental

health evaluations. *See* Student Code § 2-901, *available at*

https://studentcode.illinois.edu (last visited Dec. 14, 2022). If Doe refuses these

additional actions, the school can expel him anyway. *See id.* And if Doe does not

speak to BIT, the College of Law can expel him and destroy his legal career—

thereby causing Doe to lose hundreds of thousands (if not millions) of dollars in

lost future income.

But the school's demands are unconstitutional. Doe's First, Fifth, and

Fourteenth Amendment rights are being trampled by the College of Law. The

College of Law started the disciplinary process before Thanksgiving, *see* App.

Vol. III at 28–30;[2] Doe filed suit in the Central District of Illinois and moved

---

[2] Doe's appendix is separated into three volumes due to the vast number of messages and documents in the record. Each volume is identified as App. Vol. I (Docket Entry 6), Vol. II (Docket Entry 7), or Vol. III (Docket Entry 8). Volume I includes the docket and the district court's ruling. Volume II includes the relevant filings below, such as the Complaint and motions, and Volume III possesses the evidentiary matters, such as the messages and documents. Each volume is paginated starting from the number one. Doe is also appealing the district court's denial of his motion to proceed as John Doe, so he has redacted his name from each volume of the appendix. The district court abused its discretion when it denied the John Doe motion due to the extraordinary circumstances present in this case. *See, e.g., Doe v. Village of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). There was no justification for the denial. Defendants face no

immediately for a preliminary injunction and temporary restraining order. *See* App. Vol. II at 1–62. The district court denied Doe's motion, but it made several factual and legal errors in its ruling, and it did not address many of Doe's arguments. *See* App. Vol. I at 1–13.

Since the denial, the College of Law has informed Doe that they are moving forward with the disciplinary process. *See* App. Vol. III at 114. So given the short time frame, Doe respectfully asks for emergency consideration of this motion and an immediate injunction pending appeal or summary reversal of the district court's ruling. But either way, Doe is likely to succeed on the merits of his claims, and he should have received the injunction below. Doe moved for an injunction pending appeal at the district court on December 19, 2022, and the court denied it the next day. *See* Fed. R. App. P. 8(a).

Doe deserves the opportunity for a proper adjudication on the merits of his claims. Because the school is moving forward with the disciplinary process, there is not enough time to go through the normal appellate process absent an injunction or summary reversal. The school is likely to expel Doe while the appeal is pending. Additionally, the key points on appeal are the constitutional

_____

prejudice, and the public faces no harm. Meanwhile, Doe faces the potential of losing hundreds of thousands (if not millions) of dollars in lost future income.

harms that the College of Law has inflicted on Doe. The constitutional harms are enough to receive the injunction because they satisfy both the irreparable and imminent harm standards, and he is likely to prevail on the merits of his claims. The balance of harms factor also weighs in his favor. The district court did not address any of these points outside of compelled speech. *See* App. Vol. I at 1–13.

Specifically, Doe would like the Court to enjoin Defendants from: (1) enforcing any discipline on him for refusing to speak to BIT against his will during the pendency of this appeal; (2) sending his protected student speech to BIT during the pendency of this appeal; and (3) enforcing any discipline on him for not complying with an alleged "reasonable" directive by a University official under Student Code § 1-302(g) during the pendency of the appeal. The remaining parts of the injunction can be addressed on appeal.

Alternatively, the Court can summarily reverse the district court and remand with instructions to redo its analysis of the issues. Time is of the essence here.

## BACKGROUND

### I.       Factual History

Doe began his legal education at the University of Illinois College of Law in August 2021.[3] Doe informed the College of Law that he would consider filing lawsuits and capricious grading complaints as allowed under Student Code § 3-107, and he had two meetings with College of Law officials in February 2022 and March 2022. *See generally* App. Vol. II. Doe also had a meeting with Dean Virginia Vermillion at the College of Law, where she made bigoted remarks about his race, religion, national origin, and ethnicity. *See id.*

Afterwards and unbeknownst to Doe, Vermillion filed a defamatory report to BIT filled with falsehoods about Doe's mental state in March 2022. *See id.* Following that point, the College of Law communicated with BIT repeatedly about Doe but did not inform Doe. *See id.* From June to October 2022, BIT and the

---

[3] Doe is not going to provide an exhaustive account of the factual history here, as the in-depth history is documented in Doe's Complaint and the motion documents from both sides. *See generally* App. Vol. II. The main thrust is that the College of Law referred Doe to BIT and did not provide Doe or BIT any factual basis for the referral. *See id.* The school refused to provide facts to Doe and demanded that Doe speak to BIT without providing him details. *See id.* There is no evidence of any threatening or disruptive behavior on Doe's part. *See id.* BIT supposedly exists to prevent "targeted violence" against the University. *See* App. Vol. III at 84–92.

College of Law reached out to Doe repeatedly and demanded meetings without any factual basis to do so. *See id.* Doe refused to meet with BIT and said that he would consider taking legal action. *See id.* Doe did not see Vermillion's report until October 28, 2022, and he was not informed about the possibility of dismissal until October 25, 2022. *See id.*

On November 4, 2022, Doe met with Deans Amar and Winship via Zoom—both sides had counsel present. *See id.* In this meeting, Amar and Winship presented Doe and his counsel with information from Vermillion's report. *See id.* The pair read some of Doe's communications out loud and disagreed with some of his statements. *See id.* The pair demanded that Doe meet with BIT or face dismissal from the school. *See id.* The pair refused to consider any other options and repeated that dismissal was imminent. *See id.* Although the meeting was scheduled to seek a solution to the issue, the College of Law sought no solution—just strict compliance. *See id.*

Since that point, Dean Winship has continued to hound Doe with deadlines regarding the school's disciplinary process. *See, e.g.*, App. Vol. III at 28–30, 114. The College of Law has made it clear through these communications that they are moving forward with discipline. *See id.*

## II.    Procedural History

Doe filed his Complaint on November 18, 2022, and moved immediately for a preliminary injunction and temporary restraining order. *See* App. Vol. II at 1–62. Doe's Complaint included six counts and nine total claims: compelled speech, retaliation, chilling of free speech, void-for-vagueness, overbreadth, racial discrimination, sex discrimination, deprival of property without procedural due process, and deprival of liberty without due process.[4] *See id.* at 14–27. In his prayer for relief, he asked for permanent injunctions on compelled speech, retaliation, chilling of free speech, void-for-vagueness, overbreadth, deprival of property without due process, and deprival of liberty without due process. *See id.* at 28–30. In his preliminary injunction motion, he focused on compelled speech, retaliation, chilling, void-for-vagueness, and overbreadth. *See id.* at 32–34. However, the other claims are preserved due to the Complaint. *See id.* at 14-27.

The school responded to the motion on November 28, 2022, and ignored much of the actual substance of Doe's motion. *See id.* at 64–82. Instead, it made baseless assertions about Doe's mental health and accused him of being

_____

[4] Doe is appealing his Amended Complaint, and he alerted the district court in his motion for reconsideration. *See* App. Vol. II at 112–14.

"paranoid" and "delusional" without any factual basis or context. *See id.* The

school's response was a continuation of its refusal to provide any grounds or

concrete examples to justify why it referred Doe to BIT. *See id.* When the school

finally got around to the law, it focused on irreparable harm, and argued that the

school's disciplinary process meant that there was no irreparable harm. *Id.* at 68–

72. The school objected to Doe's compelled speech claim, but it barely addressed

any of the other constitutional claims. *See id.* at 75–79.

Doe replied on December 1, 2022, and pointed out that he was *not*

challenging the school's disciplinary process. *See id.* at 88–90. Rather, at the

November 4th meeting, the school told Doe that it would move to expel him if he

did not comply and meet with BIT. *See id.* However, Doe noted that

constitutional harm satisfies the irreparable harm standard regardless of the

disciplinary process. *See id.* at 90. Doe also addressed all the University's points

and provided contrary information about the compelled speech claim. *See id.* at

85–108.

### III.    The District Court's Order

The district court issued an order denying Doe's motion in full on

December 5, 2022. *See* App. Vol. I at 1–13. The district court adopted Defendants'

position that there was no irreparable harm. *See id.* However, the district court

focused most of its analysis on the disciplinary process. *See id.* at 11–13. The

district court also claimed that there was no compelled speech violation because

the school supposedly was not asking Doe to "utter a single word." *Id.* at 11. That

statement is clearly erroneous.

## ARGUMENT

### I.    Doe Satisfies the Irreparable and Imminent Harm Standards

Any constitutional violation is "proof of an irreparable harm." *Preston v.*

*Thompson*, 589 F.2d 300, 303, n.3 (7th Cir. 1978). Further, First Amendment harms

specifically count as irreparable harms. *Elrod v. Burns*, 427 U.S. 347, 373 (1976)

("The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury."); *Cassell v. Snyders*, 990 F.3d 539,

546 (7th Cir. 2021) (same).

Here, each of Doe's claims have a constitutional backing. *See* App. Vol. II at

14–27. Any one of Doe's claims on the First Amendment or due process would

suffice to satisfy the irreparable harm standard. *See Preston*, 589 F.2d at 303, n.3.

Doe's claims about void-for-vagueness and overbreadth have a First

Amendment backbone, so they would count as well. *See* App. Vol. II. at 14–27.

None of these claims have anything to do with the school's disciplinary process. *See id.* But the district court refused to address any of these claims outside of compelled speech. *See* App. Vol. I at 1–13. Thus, the school's disciplinary process should be enjoined as applied to Doe because of the constitutional harm—regardless of whatever process it provides Doe. *See Elrod*, 427 U.S. at 373; *Cassell*, 990 F.3d at 546; *Preston*, 589 F.2d at 303 n.3.

The harm is also imminent because the school is demanding that Doe speak to BIT against his will (compelled speech); they are sending his protected First Amendment speech to BIT (retaliation); Doe fears being reported to BIT if he speaks at all (chilling); they are using the Student Code to demand the meeting with BIT and to threaten discipline if Doe does not comply (void-for-vagueness and overbreadth); the Student Code does not require Doe to speak to BIT, and the school did not provide notice or a hearing *before* demanding the meeting (property due process deprival); and the school made baseless allegations about Doe's mental health which can impact his employment, and they did not provide notice or a hearing *before* sending the information to BIT (liberty due process deprival). All of these things are happening *now*. But again, the district court refused to address any of those points outside of compelled

10

speech. *See* App. Vol. I at 1–13. When Doe moved for reconsideration, the district court provided a one sentence explanation that it believed Doe's "object" only related to compelled speech. *See* Docket Entry 1-1 at 21. That is simply not the case. Also, traditional legal remedies would be inadequate because no money could repair the loss of Doe's legal career.

## II.    Doe is Likely to Prevail on the Merits of His First Amendment Claims

### A.    Compelled Speech

"In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969). "[Students] cannot be punished merely for expressing their personal views on the school premises . . . unless school authorities have reason to believe that such expression will 'substantially' interfere with the work of the school or impinge upon the rights of other students." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (quoting *Tinker*, 393 U.S. at 509).

"When speech is compelled . . . damage is done." *Janus v. AFSCME*, 138 S. Ct. 2448, 2464 (2018). "Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason, one of our

landmark free speech cases said that a law commanding 'involuntary affirmation' of objected-to beliefs would require 'even more immediate and urgent grounds' than a law demanding silence." *Id.*

The facts of this case are controlled by *Miller v. Skumanick*, where a group of teens were caught "sexting." 605 F. Supp. 2d 634, 640, 644 (M.D. Pa. 2009), *aff'd sub nom. Miller v. Mitchell*, 598 F.3d 139, 150 (3d Cir. 2010). In *Miller* a prosecutor threatened criminal prosecution if the teens did not attend a program to address why their actions were wrong. *Miller*, 605 F. Supp. 2d at 640, 644.

Here, the district court distinguished *Miller* based on the idea that the University was supposedly not requiring Doe to "utter a single word." App. Vol. I at 11. That statement is clearly erroneous as a factual matter.[5] Dean Amar suggested otherwise at the November 4th meeting. There is clear evidence in the record from Defendants Justin Brown and Katherine Snyder that BIT wanted to speak to Doe about the report and messages that the College of Law sent to BIT. *See, e.g.*, App. Vol. III at 1–2, 10–16. Moreover, the district court's factual finding defies common sense. If BIT's goal is to prevent "targeted violence," how could they accomplish that goal if the student could remain silent? BIT obviously

---

[5] On appeal, this Court will review factual matters for clear error and legal issues de novo. *See, e.g.*, *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020).

would expect Doe to speak and respond. *See, e.g.*, *id.* Thus, this case is just like *Miller*, where the students would have been required to explain and justify themselves. *See Miller*, 605 F. Supp. 2d at 640, 644.

The district court also claimed that the parties agreed that the University's "codes of conduct" require Doe "to comply with BIT's 'reasonable' requests." App. Vol. I at 10. That is also clearly erroneous as a factual matter. Doe repeatedly argued that the University's Student Code barely mentions BIT. *See generally* App. Vol. II; Student Code. Rather, the school is using the vague and overbroad provision of § 1-302(g) to demand that Doe speak with BIT. *See* Student Code § 1-302(g). But that provision does not mention BIT at all. *See id.* There is no provision in the Student Code that specifically requires a student to meet with BIT.

The district court also incorrectly suggested that compelled speech can only occur when the University compels "individuals 'to voice ideas with which they disagree.'" App. Vol. I at 10 (quoting *Janus*, 138 S. Ct. at 2464). The Supreme Court has never limited compelled speech to that context, and other circuits have noted that compelled speech can occur even in the absence of a specific message. *See Miller*, 598 F.3d at 152 n.14 ("compelled speech is not limited to . . . requiring

a speaker to express a certain viewpoint or message"). Meeting with BIT *would* require Doe to agree with the school's message that he did something requiring explanation. But it is not a requirement for compelled speech. And affirming the district court's rationale would create a conflict among the circuits. *See id.*

Therefore, the district court's ruling cannot be sustained on the compelled speech point either factually or legally. The parties deserve an opportunity to fully brief this issue and have oral argument to allow the Court to properly address these issues. The school should be enjoined from moving forward with discipline until that happens.

### B.    Retaliation

Doe is also likely to prevail on his First Amendment retaliation claim. Every communication between Plaintiff and a member of the University's faculty or staff, including at the College of Law or BIT, is protected First Amendment communication. Defendants conceded that they reported Plaintiff's protected speech to BIT, which constitutes retaliation under the First Amendment. *See generally* App. Vol. II.

A prima facie case of retaliation means that Doe (1) "engaged in activity protected by the First Amendment;" (2) "suffered a deprivation that would likely

deter First Amendment activity in the future; and (3) [that] the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotations and citations omitted).

All three elements are present here. Doe's capricious complaint to Amar— a complaint allowed by Student Code § 3-107—was protected First Amendment speech. Doe suffered a deprivation because Defendants reported the protected speech to BIT. *See generally* App. Vol. II. Further, Doe's comments to Amar and Vermillion at the March 2022 meeting were protected speech. Defendants sent it to BIT within *days* which satisfies the temporal (motivating factor) element, and Doe is much less likely to engage in First Amendment speech because of BIT's involvement. *See id.; Douglas*, 964 F.3d at 646.

The underlying report and referral to BIT is based on Doe's protected speech. This is retaliation, and Doe should get an injunction. But the district court did not address this point. If the process involving Doe violates the First Amendment as it stands, then the school is violating the First Amendment, and they lack the authority to force a meeting with BIT. Doe specifically asked for the district court to enjoin Defendants from sending his protected speech to BIT in

his motion for a preliminary injunction and temporary restraining order. *See* App. Vol. II at 32. Thus, the district court plainly erred by not addressing this issue in its opinion. *See* App. Vol. I at 1–13. The one sentence rejection in its denial of Doe's motion for reconsideration is also insufficient. *See* Docket Entry 1–1 at 21. Doe deserves an opportunity to brief this issue or have this issue properly adjudicated before the school moves forward with discipline.

### C.   Chilling of Doe's Free Speech

Likewise, Doe is likely to prevail on his chilling argument. The BIT process chills his speech because Doe now fears being reported to BIT if he speaks at all due to BIT's broad standards. *See infra* at 20. And because the University of Illinois is a public school, this clearly violates the First Amendment. The University cannot chill speech that it disagrees with based on undifferentiated and irrational fears. *See Tinker*, 393 U.S. at 508.

The *Tinker* substantial disruption standard is the default rule in the Seventh Circuit. *See N.J. by Jacob v. Sonnabend*, 37 F.4th 412, 424 (7th Cir. 2022). Further, "[t]he application of *Tinker* must account for such factors as the age and grade level of the students to whom the speech is directed . . . ." *Id.* at 426. "[T]he

inquiry [also] accounts for the professional knowledge and experience [of administrators] in setting and enforcing disciplinary standards." *Id.*

Here, the College of Law's entire basis for forcing Doe to speak to BIT is its irrational fears about Doe based on unfounded and nonsensical beliefs about his mental health. *See generally* App. Vol. II; App. Vol. III. The school has conceded that there is no threat, and they have not argued that there was any disruption. *See generally* App. Vol. II. Moreover, Doe is an adult, as are the rest of the students and faculty at the College of Law, and the faculty is comprised of former lawyers and law clerks who should understand how the First Amendment works. So naturally, the College of Law has an extremely short leash when it comes to regulating speech on campus. *See Sonnabend*, 37 F.4th at 426; *see also McCauley v. Univ. of V.I.*, 618 F.3d 232, 242 (3d Cir. 2010) ("there is a difference between the extent that a school may regulate student speech in a public university setting as opposed to that of a public elementary or high school").

Indeed, the *McCauley* court noted the differences between public colleges and K-12 schools in-depth before striking down the college's provision there under the overbreadth doctrine. *See McCauley*, 618 F.3d at 242–52. Thus, Doe's

17

speech is harmless or protected, and the University of Illinois fails under *Tinker*. *See Sonnabend*, 37 F.4th at 424 ("[t]he default rule is . . . *Tinker*").

Again, Doe should have received an injunction. If the BIT process as applied to Doe is violating the First Amendment, the school lacks the authority to force a meeting with BIT. The attempted forced meeting with BIT is not just about compelled speech. The basis for requiring the meeting *is* Doe's speech. *See generally* App. Vol. II; App. Vol. III. But the district court refused to address the point. *See* Docket Entry 1–1 at 21. Doe deserves a proper adjudication on this issue, and the school should be enjoined from pursuing discipline until he receives such an adjudication.

### D.    Void-For-Vagueness and Overbreadth

Doe is also likely to prevail on his void-for-vagueness and overbreadth claims, and each one implicates the First Amendment. An enactment is void-for-vagueness if it is not clearly defined. *See, e.g., Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). If an enactment reaches protected First Amendment conduct, "the [void-for-vagueness] doctrine demands a greater degree of specificity than in other contexts." *Smith v. Goguen*, 415 U.S. 566, 573 (1984). At universities, a student code provision "must give adequate warning of the conduct which is to

be prohibited and must set out explicit standards" for its application. *UWM Post, Inc. v. Bd. of Regents of Univ. of Wis. Sys.*, 774 F. Supp. 1163, 1178 (E.D. Wis. 1991).

Here, the provision of the University's Code threatens discipline if a student "fail[s] to comply with reasonable directions of a member or agent of the university acting in the performance of their duty." Student Code § 1-302(g). The University provides no definition or guidance on how it will use the provision. But the College of Law uses the provision here and threatens expulsion if Doe does not comply with BIT. That is unacceptable. *See UWM Post*, 774 F. Supp. at 1178 (a student code provision "must give adequate warning of the conduct which is to be prohibited and must set out explicit standards for those who apply it"). The Student Code barely mentions BIT, and BIT is not mentioned in § 1-302(g). Thus, Student Code § 1-302(g) fails under the void-for-vagueness doctrine.

Similarly, overbroad laws deter "people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas." *United States v. Williams*, 553 U.S. 285, 292 (2008). Thus, a provision "is facially invalid if it prohibits a substantial amount of protected speech." *Id.*; *see also McCauley*, 618 F.3d at 241 (a college provision "may be struck down on its face . . . if it reaches too much

expression that is protected by the Constitution"). Overbreadth analysis has two steps: First, the court "construes" the challenged provision. *Williams*, 553 U.S. at 293. Second, the court evaluates whether the provision, as constructed, punishes "a substantial amount of protected expressive activity." *Id.* at 297.

Here, the provision fails under both steps. The provision states that a student must comply with any "reasonable" directive by a "member or agent" of the University—which applies to many people. Student Code § 1-302(g). The term "reasonable" is undefined. The College of Law's construction suggests that it could apply to just about all speech, and nothing suggests that there are any limiting principles; BIT is not mentioned anywhere. Thus, § 1-302(g) fails under the first step. *See Williams*, 553 U.S. at 292–93.

The BIT process also implicates a "substantial amount of protected expressive activity[,]" so it fails under the second step. *Id.* at 297. BIT asks people to report anyone who has suffered "humiliation" or a "termination" from a job or "failed civil actions[,]"or anyone who appears "self-centered[]." App. Vol. III at 88. They also want reports on anyone who has an "[i]ncreasingly strident opinion." *Id.* at 90. Thus, Student Code § 1-302(g) is overbroad, and the Court should strike it down. *See McCauley*, 618 F.3d at 242–52.

Doe argued for both void-for-vagueness and overbreadth in his motion. *See* App. Vol. II at 58–62. Defendants failed to respond and essentially waived any counterarguments. *See id.* at 64–82. Doe should have received an injunction. If the provision fails, the school does not have the authority to force a meeting with BIT. Therefore, the district court's failure to address these arguments is plain error.

## III.    Doe is Likely to Prevail on His Due Process Claims

Doe also has both property and liberty due process claims, and he asked for injunctions in his Complaint. *See id.* at 14–27. Thus, the arguments are preserved on appeal. *See id.*

The relationship between Doe and the University of Illinois is a matter of contract. *See Doe v. Purdue Univ.*, 928 F.3d 652, 661 (7th Cir. 2019). Doe and the University have a contract here, but the Student Code does not require Doe to speak to BIT. Moreover, the school did not provide Doe notice or a hearing *before* requiring the meeting with BIT. Thus, the meeting with BIT is invalid, and the school should be enjoined.

Similarly, this Court applies the stigma-plus test for claims of a deprivation of liberty without due process. *See id.* at 661–64. Here, Vermillion's report contains

21

numerous falsehoods, and Doe did not receive any notice or a hearing *before* the school referred him to BIT. The fact that this can impact his employment triggers the stigma-plus test.[6] *See id.* Doe is likely to prevail, and the school should be enjoined. Doe deserves a proper adjudication on his due process claims before the school can move forward with discipline.

IV.    **Summary Reversal**

A.    **The District Court's Ruling is Clearly Erroneous**

As mentioned above, the district court committed both factual and legal errors in its ruling. *See* App. Vol. I at 1–13. Thus, the Court could also summarily reverse the district court.

"Summary disposition is appropriate in an emergency, when time is of the essence and the court cannot wait for full briefing and must decide a matter on motion papers alone." *United States v. Fortner*, 455 F.3d 752, 754 (7th Cir. 2006). Further, courts can summarily dispose of appeals *sua sponte* without briefing if the issues are clear. *See Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994)

---

[6] The stigma-plus test is government action that defames a person (stigma) in a way that impacts their employment or changes their legal status (plus). *See Paul v. Davis*, 424 U.S. 693, 706–07 (1976).

(collecting cases); *see also Sills v. Bureau of Prisons*, 761 F.2d 792, 794 (D.C. Cir. 1985) (granting summary reversal).

Here, time is of the essence, and the district court only addressed compelled speech and the school's disciplinary process. *See* App. Vol. I at 9–13. But the compelled speech ruling is erroneous, and Doe is not challenging the disciplinary process. The whole disciplinary process discussion is a diversion because Doe is challenging the *constitutional harms*.

The court also provided almost no justification for its John Doe denial, which itself is an abuse of discretion. *See Doe v. Village of Deerfield*, 819 F.3d at 377. The court claimed that Doe waived the issue but ignored the fact that Doe filed an Amended Complaint with redactions and asked the court to seal the previous filings. *See* App. Vol. II at 107–08. The court provided a one sentence justification in the hearing and motion for reconsideration. *See* Docket Entry 1–1 at 21. Thus, although Doe would prefer an injunction pending appeal, the Court could also summarily reverse the district court without briefing and remand with instructions to properly address the constitutional issues and John Doe motion.

## CONCLUSION

Doe deserves a fair adjudication of his claims before the school can move forward with its disciplinary process. In the absence of this Court's intervention, Doe will have no choice but to engage the school and continue to face unconstitutional demands and actions by the University. The Court should grant an injunction as applied to Doe pending appeal. Alternatively, the Court should summarily reverse the district court.

Respectfully submitted,

Dated:  December 20, 2022

/s/Justin Schwartz
Justin Schwartz
ARDC No. 627328
1723 Devon Ave. # 607882
Chicago, IL 60660
(847) 687-5477
justinschwartzlaw@gmail.com

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the word limit of Federal Rule of Appellate Procedure 27 because this motion contains less than 5,200 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f).

The motion also complies with the typeface requirements of Federal Rule of Appellate Procedure 27, and the style requirements of Federal Rule of Appellate Procedure 32.

/s/Justin Schwartz

**CERTIFICATE OF SERVICE**

I certify that I filed the above document via the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system once they appear.

/s/Justin Schwartz

**CORRECT LEGAL STANDARD**

When a party seeks a preliminary injunction or temporary restraining order based on constitutional harm, "the likelihood of success on the merits will often be the determinative factor." *ACLU v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) (citation omitted). That is because First Amendment harms specifically count as irreparable harms, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and any constitutional violation satisfies the irreparable harm standard. *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978). Further, constitutional harms make the "quantification of injury . . . difficult and damages are therefore not an adequate remedy." *Alvarez*, 679 F.3d at 589 (citation omitted). Thus, the key question with constitutional violations is the likelihood of success on the merits because "if the moving party establishes a likelihood of success on the merits, the balance of harms normally favors granting preliminary injunctive relief." *Id.* at 589–90. *See Elrod*, 427 U.S. at 373 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Korte v. Sebelius*, 735 F.3d 654, 666 (7th Cir. 2013) (refusing to "weigh the injunction equities" because "the analysis begins and ends with the likelihood of success on the merits of the [constitutional] claim"); *Alvarez*, 679 F.3d at 589 (the likelihood of success on the merits is often determinative in First Amendment cases).

As it relates to compelled speech, the doctrine is not limited to government messages. The Supreme Court has never limited compelled speech to that context, and other circuits have noted that compelled speech can occur even in the absence of a government message. *See Miller v. Mitchell*, 598 F.3d 139, 151 n.14 (3d Cir. 2010) ("compelled speech is not limited to . . . requiring a speaker to express a certain viewpoint or message"); *see also Full Value Advisors, LLC v. SEC*, 633 F.3d 1101, 1108 (D.C. Cir. 2011) ("First Amendment concerns may even be

1

present when the state compels speech in a content-neutral manner."). The question then with participation or content-neutral requirements is whether the scrutiny would be strict or intermediate. *See Miller*, 598 F.3d at 152 n.14 (discussing scrutiny). The basis for the participation or content-neutral analysis arises out of the Supreme Court's decision in *Turner Broad. Sys., Inc. v. FCC*, which is binding on lower courts. 512 U.S. 622, 642 (1994). Thus, the school's demand should have been subjected to compelled speech analysis regardless of the message involved.

There were two main issues on compelled speech: (1) was the school's rationale for demanding participation from Plaintiff a government message? And if not, (2) was the mere participation alone a violation under intermediate or strict scrutiny?